Brockenbrough, J.
The only question which I deem it necessary to consider in this case, is, whether the plaintiff used due diligence in suing the maker of the note, before he brought his suit against the defendant ? or rather, whether he was excused from suing the maker by his removal to Maryland, under the circumstances set forth in the demurrer to evidence ?
The general rule is, that the assignee of a bond or promissory note must use due diligence to recover the amount of it from the obligor or maker, before he can resort to the assignor. A suit is in general necessary, but there are circumstances which will excuse the assignee from bringing one. The insolvency of the obligor is one substantial ground -of excuse, and there are others pointed out by the judges in the case of Caton & Veale v. Lenox, 5 Rand. 31. Is absence from the country, or non-residence, a sufficient excuse ? If the obligor is a non-resident at the time of the execution of the bond, I apprehend it is clearly not a good excuse. In such case the assignee knows the fact of non-residence, or must'be presumed to know it, when he takes the assignment. He makes the contract on the usual terms of using due diligence, and impliedly stipulates that he will sue him, if necessary, where he resides. Such was the case of Dulany v. Hodgkin, 5 Cranch 333. The maker resided in Virginia, never having been in the district of Columbia; the suit was brought in the district against the assignor; and it was held, that the residence in a foreign jurisdiction was no excuse for not having sued the maker. If the obligor be a resident of the state, at the time of the execution of the bond, but afterwards removes beyond its limits, without the knowledge of the assignee, or before he has a right to sue, it seems to me, that he may elect whether he will follow the obligor into another state, or not. It can hardly be said, that he is necessarily bound to follow him; for when he took the assignment he must be understood as *391 contracting with reference to the amesnability of the obligor to the laws of the state where he resides. But justice requires, that if the assignee elects not to follow the debtor, he should, in due time, offer to rescind the contract, and to return the bond to the assignor, on the restoration of the consideration; for, by doing so, he would enable the assignor to recover the money from the debtor. If the offer be refused, then, I should think, the liability of the assignor would attach without any suit against the obligor. On the other hand, if the assignee holds on upon his evidence of debt, without an oiler to return it, he thereby elects to hold the obligor liable to him, wherever he may be, and is bound to follow him into another state. Having made such election, he is bound to use the same diligence to recover the debt, that he would if the obligor remained in the state. In the present case, the note was executed in Fairfax on the 10th June 1818, and became due on the 12th August of the same year. It does not appear very satisfactorily, whether the removal of Thomas Drane, the maker, occurred before or alter the execution of the note. The proof is, that he removed in the summer of that year. He may have been a resident of Maryland on the 3 Oth June; in which case, it is clear, the plaintiff was bound to sue him there. If he removed after-wards, the plaintiff ought to have proved it, if he intended to rely on that circumstance as an excuse. He has failed to do so; and, moreover, he has not proved that he abandoned his claim on the maker, or offered. to return the note to the defendant; but, on the contrary, he has elected to hold the obligor responsible to him, and for that purpose sued him in Maryland. Did he use the proper diligence in instituting and conducting that suit ? I think not. He allowed more than eighteen months to elapse before he brought the suit, and in the conduct of it, he pursued the extraordinary course of imparling, by which he failed to file his declaration for *392 another year. In the meantime, it appears, the maker became insolvent. When he removed to Maryland he had in possession two slaves, and he continued for some time to hold them, as well as some household furniture, on all of which, if due diligence had been used, an execution might have been levied, and the money made. Upon the whole, I am of opinion that the plaintiff has not supported his claim to a recovery against the defendant, and that the judgment should be reversed.
Carr, J.
There were several points argued at the bar; some of them of considerable interest—as, 1. Whether, in a suit by an assignee against a remote assignor, under the statute of Virginia, the assignment will support a general count in indebitatus assumpsit ? 2. Whether the assignee can maintain an action against any assignor, without having established the obligor’s insolvency, by suit or otherwise, where the obligor has removed from the state after executing the bond assigned ? And 3. whether the defendant demurring to the plaintiff’s evidence, can, on the argument of such demurrer, take exception to the declaration, or to the' admissibility of the evidence ? I shall not discuss these points, as I understand a majority of my brethren are of opinion, that however they may be decided, the case is against the defendant in error, upon the ground of diligence. On the third point, I will barely refer to Cocksedge v. Fanshaw, 1 Doug. 119. and Cort v. Birkbeck, Id. 218. where the same question was raised and decided by the court. I confess that upon the ground of due diligence, I am not satisfied with the conclusion my brethren have come to. A jury, perhaps, might have drawn the same conclusion; but it does not seem to me, that therefore the court must do so on a demurrer to evidence. It is a difference, however, about the effect of the facts, and conclusions of fact; and I yield, without discussing it.
*393 Cabell, J.
A question was made in the argument, whether the assignee of a promissory note can recover from a remote assignor, on the general counts for money had and received,—lent and advanced,—or paid, laid oat and expended? As it is not necessary to decide this question in this case, I give no opinion upon it.
I am of opinion that the facts disclosed by the demurrer to the evidence, shew that the plaintiff did not use due diligence to recover the money from the maker. In questions concerning dire diligence, the burden of proving it, is always upon that party whose interest it is to establish it. The plaintiff in this case, seeks to recover from the assignor, on the ground that although he used due diligence, he could not recover from the maker. It is not pretended, that the maker was insolvent at the time of the assignment, or at the lime when the note became due, nor is the claim to recover from the assignor, put upon that ground. At the time of the assignment, the maker of the note resided in this state, very near the line which separates it from Maryland; but, some time after the assignment, he moved over into Maryland, and established himself there, at a distance less than twenty miles from the place of his former residence. I do not think it necessary to inquire, whether, in every case where the maker of a note removes, after the assignment to another state, even one of the most remote, the assignee is obliged to pursue him there; but I am clearly of opinion, that where the removal is open, public and notorious, and not farther than it was in this case, the obligation to pursue him (unless he is insolvent at the time) is necessarily implied in the idea of duo diligence. That course was not pursued in this case, until a great length of time was lost, in an erroneous and fruitless action against another indorser. Therefore, I should think, on that ground, if there were nothing else in the case, that the law is for the plaintiff in error. But even if it were true *394 that the assignor was not bound to follow the maker out of the state, yet he had a right to do so; and as he elected to do so, he ought to have pursued him in due time. This he did not do, as before remarked; and, on this ground also, he ought to fail against the assignor. And even if it were admitted, that he commenced his action against the maker in due time, yet the evidence shews, that he prosecuted the action so negligently, as to absolve the assignor from liability; for it appears that he, the plaintiff in the action, instead of prosecuting it diligently, unnecessarily imparled with the defendant one whole year. The claim of the holder, then, against the assignor, so far as it depends on his having actually used due diligence against the maker, is utterly without foundation. If he attempts to rest it on the ground, that he was under no obligation to pursue the maker, he must equally fail; for even admitting that he was under no obligation to pursue him, then he should immediately have demanded the money from the assignor, with an offer to return the note, that the assignor might take measures to recover from the maker. It would be against all justice, that the assignee of a note should seek to subject the assignor to its payment, after, having thus held it up for years, without any notification of his intention to hold him liable, and without offering him the means of saving himself by suing the. maker. I am of opinion that the judgment should be reversed, and judgment entered for the plaintiff in error.
Brooke, J.
I do not think the assignee of the note was bound to go out of Virginia, to establish the insolvency of the maker. ’ At the time the note was assigned, all the parties resided in this state; and the international law did not require the assignee to go out of the state in which he took the assignment. I understand the principle to be, that whatever duty the con *395 tract required of him, it was to be performed according to the la.w of the place where the contract was made. Judge Story, in his treatise on the Conflict of Laws, p. 199. referring to Boullenois, cites the rule, that the law of the place of the contract is generally to govern, in every thing that forms the obligation of the contract, or what is called vinculum obligations. In the present case, it was an implied part of the obligation of the contract of assignment, that the assignee should establish the insolvency of the maker of the note, before he should, have recourse against the assignors or any of them; and, according to the decisions of this court, he was bound to use due diligence, putting the action he brought in Maryland out of the case. Though he was not bound to pursue the maker in Maryland, to establish his insolvency, 1 think he has not shewn due diligence in pursuing him before he left Virginia. On this point, his evidence, as set out in the demurrer, is defective; and, as the plaintiff was bound to prove his case, I therefore think, that the judgment must be reversed, and judgment entered for the plaintiff in error.
Tucker, P.
There is no doubt, I think, that the assignee of a bond or note may recover against a remote assignor, upon the general counts for money had and received, and for money laid out and expended. The statute, 1 .Rev. Code, ch. 125. § 6. p. 484. provides, that the assignee shall be entitled to recover from any previous assignor, but that in any suit against a remote assignor, the defendant shall have the benefit of the same defence, as if he had been sued by his immediate assignee. It is obvious, that the statute designed to substitute the remote assignee to the right of action of the immediate assignee. It was not designed to give him a right of action which the latter had not; nor was it designed to withhold from him the right of action which the latter had. This is not only evinced by the very *396 purpose and object of the law, but by the provision that the defendant shall have the same defence as if sued by his immediate assignee; for it is natural to presume, that in authorizing the same defence the legislature contemplated the same kind of action. Now, it had long been well settled,-that in those actions the assignee does not recover against even his immediate assignor by force of the assignment, but by force alone of the common law principle of the action for money had and received. Mackie's ex'or v. Davis, 2 Wash. 219. Riddle v. Mandeville, 5 Cranch 322. 331. If this then was the form of action in which alone the immediate assignee of Drane could have sued him, it is precisely the form of action, in which the remote assignee is bound to sue him. There can be neither a reason nor a motive on the part of Drane, for demanding that a form of action should be pursued against him, different from that to which alone he had subjected himself by his assignment to his immediate assignee; nor could there have been a motive in the legislature for giving such different action. On the contrary, the only object of the statute was to make the remedy immediate, not to change its character or form. Nay more, the courts having decided that the action at law would not lie, Mandeville v. Riddle, 1 Cranch 290. Caton & Veale v. Lenox, 5 Rand. 31. but that a suit in equity would lie against the remote assignor, 5 Cranch 331. it was designed to make that remedy legal, which before was only equitable. And as the equitable remedy merely enforced the right of the ultimate assignee against the remote assignor, it must be the province of its substitute, the action at law, to do the same. The authority cited (Chitty on Bills,* 467, 8.) to prove that on commercial paper, the common money counts in indebitatus assumpsit will not lie for the indorsee against a remote indorser, has no application to assignments under our statute. In the case of commercial paper, *397 the indorser is liable specially upon his indorsement, and must be charged accordingly. Whether he ha.s or has not received value from his immediate indorsee, is nothing to the remote indorsee. He is liable to this last by reason of his indorsement, upon certain conditions implied in the contract of indorsement, and he must therefore be sued upon that contract, specially. But an assignor of a bond or note is not liable by reason or virtue of the mere act of assignment. He is liable merely for the money he has received for a consideration that has failed, and the action of indebitatus assumpsit is peculiarly appropriate against him. It is even appropriate for the remote assignee, though he be not considered as suing in right of his assignor. As to him it may bo regarded as an action for money paid to defendant’s use. Thus, in this case, by the failure of the consideration, Spear, the immediate assignee of Drane, would have had a right of action against him. But Scholfield has paid value for the note to Spear, and waiving his demand against him, asserts it against Drane, thus absolving Drane from Spear’s demand, and entitling himself to have an action for the money, which Drane would otherwise have had to pay to Spear. In this action, nothing can be recovered b ut what Drane received; and upon the trial of it, the subject of inquiry, is the transaction between himself and his immediate assignee, which may fairly be investigated under the general count: whereas, if the plaintiff were tied down to a special count, he must be driven to state the special contract between his own assignor and the prior assignor, of which he may not be accurately informed, and for the slightest variance discovered on the trial he must be non-suited. I do not think such a state of things, could have been contemplated by the legislature, in giving this action against the remote assignor.
On the subject of due diligence, however, my opinion is with the plaintiff in error. It seems to have been *398 decided in Dulany v. Hodgkin, 5 Cranch 333. that in order to absolve the assignee from the necessity of a suit or proof of insolvency, it is not sufficient to prove that the maker was out of reach of the process of the court. A fortiori, he cannot be considered as absolved when the obligor was in the commonwealth at the time of assignment, but was suffered to leave the state for another jurisdiction, without being arrested. Now this was the case here. Thomas Drane, the maker, moved only fifteen miles: his removal was public and notorious; and he carried with him two slaves, and was moreover possessed of household furniture. This was in the summer of 1818. The assignment took place on the 18th June 1818. The suit was not brought against the maker, until the 29th February 1820. It was then delayed for twelve months longer,'by imparlances prayed by the plaintiff, to enable him to declare against the defendant ; and thus the suit was not effectually prosecuted till March 1821, nearly three years after the assignment, and two and an half after the note was at maturity. This was, I think, gross negligence; and the plaintiff, therefore, ought not to recover. From such evidence no jury, in my opinion, could fairly infer due diligence. The assignee must either shew insolvency at the time of the assignment, or before judgment and execution could have been obtained in a due course of prosecution. If instead of this, he>relies upon having sued, he must shew, that he sued in due season, and that he prosecuted the suit with due diligence. Here, he has egregiously failed in both; and I think that the judgments of the county and circuit court were both wrong, and should be reversed, and judgment entered for the plaintiff in error, defendant below.
Judgment reversed, and judgment entered for the plaintiff in error.

 American edition, Philadelphia, 1821.