## Case No. 7,099.

### The ISABELLA.

### SOLARIS v. RAMSAY et al.

[8 Ben. 139.] [1]

District Court, S. D. New York. June, 1875.

Beebe, Wilcox & Hobbs, for the vessel.
Foster & Thomson, for C. G. Ramsay & Co.

BLATCHFORD, District Judge. Giovanni Solaris, as master of the steamship Isabella, files a libel against Charles G. Ramsay and Gustav R. Westfeld, composing the firm of C. G. Ramsay & Co., to recover the sum of $270.03, gold, as the freight and primage for the carriage of 1,381 bags of coffee from Rio de Janeiro, in Brazil, to New York, by the

said steamship, under a bill of lading. The libel alleges that the coffee was delivered to the respondents at New York "in the like order and condition as received, the exceptions or some of them contained in the said bill of lading alone excepted," and was accepted and received by them.

The answer of C. G. Ramsay & Co. avers that the coffee was delivered on board the vessel at Rio de Janeiro in good order and condition, and, by the terms of the bill of lading therefor, was to be delivered to the respondents in New York in like good order and condition; that, on the arrival of the vessel at New York, only a portion of the coffee was delivered to the respondents; that, owing to the careless, negligent and improper manner in which the coffee was kept on board the vessel, and the want of proper care on the part of the master, his officers and crew, and persons employed by him or them, a number of the coffee bags were gnawed and damaged by rats on the vessel, and a quantity of coffee was lost from such rat-eaten bags, by reason of which the respondents were compelled to supply and refill 363 new bags and suffered a loss in consequence of such rat-eaten bags; that they also suffered a loss on account of the deficient quantity of coffee therein, which deficiency amounted to about 2,762 pounds of coffee, worth 15⅝ cents, gold, per pound; that no part of such damage was occasioned by causes excepted in the bill of lading delivered to the consignors, or otherwise made known to them; and that thereupon the respondents refused to pay a portion of the freight, amounting to $270.03.

C. G. Ramsay & Co. also file a libel against the steamship Isabella, which avers that the 1,381 bags of coffee were shipped on board of the vessel under the bill of lading, to be delivered to them, and then makes the same allegations in respect thereto which are contained in the answer to the libel filed by the master, and seeks to recover the damages sustained.

The answer to this libel, which is put in by the Société Francaise de Navigation à Vápeur, sets up that the bill of lading contains an exception, that it is subject to "all the conditions of the company," and prays to refer to such conditions; that the coffee was delivered to and accepted and received by the libellants; that some of the bags were damaged by rats to a small amount; that one of the conditions of the company was that its ships were not liable for damages caused to the cargo by rats; and that the vessel is not liable for said damage, as well because of said condition as because it is a damage which no human effort could prevent.

The bill of lading contains the printed words, "Shipped in good order and condition," and "to be delivered in like good order and condition, * * * the dangers and accidents of the seas, rivers and navigation, of

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

whatever nature and kind soever, excepted." In the upper left hand corner of the bill of lading, on a line with the first printed line, and continuous before and with what is printed in such first printed line, are the written words: "Subject to the conditions of the company," so that the entire line written and printed reads: "Subject to the conditions of the company, Shipped in good order and condition," &c. What company is referred to is not stated in the bill of lading, nor is any company named anywhere in the bill of lading, or referred to in any other place therein. The bill of lading states that the shipment is of 1,381 bags of coffee, weighing 82,860 kilos net, made by John Bradshaw & Co., and that the bags are to be delivered to C. G. Ramsay & Co., or to their assigns, he or they paying freight for the said goods, sixty cents, gold, per bag.

By written stipulation between the parties, it is admitted, as evidence in the causes, that the bill of lading, with the memorandum written thereon, "Subject to the conditions of the company," was the only notice received, or information had, by the consignors (Bradshaw & Co.), or the consignees (C. G. Ramsay & Co.) "of the nature or contents of the conditions of the company, so called"; and that a certain exhibit annexed to such written stipulation contains "the conditions of the company," referred to in the bill of lading. The bill of lading is in English. The exhibit is in French, and is a printed form of a bill of lading, which states that the merchandise covered by it is to be transported under the conditions enumerated. Among those conditions is one, that the master is not responsible for damages caused by rats or vermin.

It is further admitted, by written stipulation between the parties, that the damages in question in these causes "arose in consequence of certain bags containing coffee being eaten by rats on the voyage to New York, and loss of coffee from such rat-eaten bags, and, with the exception of such damage to bags, and loss of coffee from bags otherwise whole, through holes eaten in such bags by rats, the cargo mentioned in the bill of lading was delivered in accordance with the requirements of such bill and in like good order as received by the said vessel."

The sole question in these cases is, whether the vessel is responsible for the loss of bags by the eating of holes in them by rats on the voyage, and for the loss of coffee caused by such eating of holes by rats on the voyage, in the bags containing the coffee. Independently of any force to be given to any expressed exception in respect of damage by rats, the carrier is liable for such damage. Damage by rats is not a peril of the sea, or a danger or accident of the sea or of navigation, within those terms in a bill of lading, at least, unless it be shown that ordinary care and diligence were used to guard against injury by rats. Aymar v. Astor, 6 Cow. 266;

Laveroni v. Drury, 16 Eng. Law & Eq. 510; Kay v. Wheeler, L. R. 2 C. P. 302; The Miletus [Case No. 9,545]; Kirkland v. The Fame [Id. 7,845], in this court, Dec. 1861.

But no evidence is given on the part of the vessel to show that any care or precaution was taken to guard against damage by rats. Non constat that the vessel was infested by rats and was so known to be by her master, and that nothing was done but to place the bags of coffee where it was known rats would gnaw the bags. The shipper is, in this respect, in the power of the master of the vessel, as to property shipped; and the fact of injury by rats must be regarded as prima facie evidence of negligence, in the absence of any explanation, or proof of care. This being so, the doctrine settled in the case of Railroad Co. v. Lockwood, 17 Wall. [84 U. S.] 357, applies, to the effect that a carrier of goods for hire cannot lawfully stipulate for exemption from responsibility for negligence. In this case the stipulation for exemption from responsibility for damage by rats, is sought to be applied to circumstances where it must be held that the rats did the damage through the negligence of those in charge of the vessel. The stipulation must, therefore, be disregarded.

I have assumed that there was such a stipulation, binding on the shippers and the consignees. But it is not intended to be decided that the appearance on the bill of lading of the written words, "Subject to the conditions of the company," was such notice of the contents of any paper containing so called "conditions of the company," as to bind the party who accepted the bill of lading to a statement in such conditions limiting what would otherwise be the liability of the vessel on the terms of the bill of lading.

The libellants in the first case must, therefore, have a decree for the amount of the damages sustained by them, with costs, and, in the second case, the libellants must have a decree for the freight on the cargo delivered, with costs.