THE ITALIA. [1]

KANTER v. THE ITALIA.

(District Court, S. D. New York. December 28, 1893.)

1. SHIPPING — DAMAGE TO CARGO — RATS—NOTICE TO SHIPOWNER — DUTY TO
TAKE DUE PRECAUTIONS.

Considering the well-known liability of lead pipe to be gnawed by rats,
when a vessel has already suffered from such cause, and it is found that
the rats cannot be subdued, reasonable prudence requires that the pipes
which run amidst cargo liable to suffer water damage, and not open to
inspection during the voyage, should be protected by a hard metal cov-
ering, or be replaced entirely by iron pipes. Failing such precaution,
the liability to such water damage is at the risk of the ship.

[1] Reported by E. G. Benedict, Esq., of the New York bar.

2. SAME—NOTICE OF THE PRESENCE OF RATS—DUTY TO EXTERMINATE THEM TO PROTECT LEAD PIPE.

Cargo was damaged on the steamship I. by water which escaped through a hole in lead piping, gnawed by rats. Rats had twice before injured the lead piping of the ship. Prior to the departure of the vessel, the usual precautions against rats, by washing and fumigating with sulphur, were taken; but it was known that they were not subdued. *Held* that, in view of the previous damage done by rats, special efforts should have been made to exterminate them, in the absence of which efforts the ship would be liable.

3. SAME—BILL OF LADING—EXCEPTIONS—"VERMIN"—TIMELY PRECAUTIONS TO PREVENT DAMAGE.

A bill of lading contained the usual exceptions, including "vermin." Cargo shipped under such bill of lading sustained water damage caused by rats gnawing the lead pipes of the ship. *Held*, not deciding whether the word "vermin" in a bill of lading should be understood to include rats, that the exception did not absolve the vessel from the lack of reasonable diligence in its equipment before the commencement of the voyage, or in due precautions to prevent injury to cargo.

In Admiralty. Libel for damage to cargo. Decree for libelant.

Shipman, Larocque & Choate, for libelant.
Wheeler, Cortis & Godkin, for respondent.

BROWN, District Judge. The libel was filed to recover for water damage to a cargo of cement brought to this port by the steamship Italia, on her voyage from Stettin in June, 1893. The damage was caused by fresh water, which, in the refilling of the fresh-water tank during the voyage, had escaped through a hole gnawed, doubtless, in the fresh-water pipe by rats. The pipe led from the top of the water tank in the hold upwards through the deck above. The pipe was encased in a box of wooden plank, to protect the pipe from the cargo which was stowed around it. To supply the passengers with an abundance of water during the warm weather of the passage, the fresh-water tank was refilled during the latter part of the voyage, on the night of 17th to 18th June. When the pumps were sounded at 6 A. M. of the following morning, four feet of fresh water were found in the hold of that compartment. On examination after arrival in port, a hole about three inches long was found gnawed in the lead pipe, just above the fresh-water tank, and a dead rat lying by it. There is no doubt that the water in the hold escaped through this hole while the tank was filling during the night of the 16th. The ship during the voyage was infested with a very unusual number of rats. Twice before, as the evidence shows, lead pipe encased in a similar way, had been eaten by rats, on the same ship.

The claimants' evidence is to the effect that the usual precautions were taken to free the ship from rats before she sailed from Stettin, by washing, and by fumigating the ship with sulphur. This was not considered, however, as wholly effective, as appears from the testimony of the chief officer:

"Q. Did you believe she was pretty free from rats in Stettin after you finished fumigating her? A. No, I don't think so.
"Q. Isn't it possible to get all rats out? A. No, that is impossible. The

rats travel along on ropes on the stages, get aboard all the time. There is no ship in the harbor without rats. This is not the only pipe they have eaten through."

The bill of lading contains the usual exceptions, including perils of the seas, vermin, and negligence of the master or other servants of the shipowner; but it does not except rats by name.

Whether the term "vermin" in a bill of lading should be held to include rats, it is not necessary here to decide; because none of the exceptions in the bill of lading absolve the vessel or her owners from the lack of reasonable diligence in the equipment of the ship before the commencement of the voyage, or in due precaution to prevent injury to the cargo. Steel v. Steamship Co., 3 App. Cas. 72; Tattersall v. Steamship Co., 12 Q. B. Div. 297; Stevens v. Navigazione, etc., 39 Fed. 562; The Caledonia, 43 Fed. 681; The Rover, 33 Fed. 515, affirmed 41 Fed. 58. Considering the well-known liability of lead pipe to be gnawed by rats, when present, of which previous examples are not wanting in the reported cases, (The Euripides, 52 Fed. 161; Hamilton v. Pandorf, 12 App. Cas. 518,) and that on this vessel twice before the lead pipe had been eaten by rats, though encased in similar planking, I think that when it was found that the rats could not be subdued in this ship, reasonable prudence required the owner, before entering upon this voyage, to protect the lead pipe that ran amidst cargo liable to suffer water damage, where the pipe was not easily accessible, nor open to inspection during the voyage, by a hard metal covering either to the pipe or to the box; or else to substitute an iron pipe in place of a lead one. A liability to water damage from such a cause, known to the shipowner, and easily avoidable by him, but neither known to the shipper, nor under his control, ought not to be at the risk of the latter.

The carpenter, whose duty it was to attend to the extermination of the rats, was not produced as a witness, on account, it is said, of his absence. The most satisfactory evidence, therefore, as to the carefulness of the endeavors to exterminate the rats, is wanting. Considering the damage previously done to the lead pipe by rats on this ship, certainly special efforts ought to have been made to exterminate them; and if such efforts were not made, the ship would be undoubtedly liable. The Isabella, 8 Ben. 139; Stevens v. Navigazione, etc., 39 Fed. 562; The Timor, 46 Fed. 859. If, on the other hand, the rats are so abundant at Stettin, or at other ports where the vessel was in the habit of touching, that notwithstanding such previous efforts rats would still infest the ship to such an extent as the testimony shows on this voyage, it seems to me that it was the duty of the owners in the equipment of the ship, and in the preparations for the voyage, to protect the water pipes effectively against rats, wherever they were a manifest source of danger to the cargo. Either of several preventives could have been easily adopted at comparatively small expense, which would have afforded adequate protection.

Decree for libelant, with costs.