# RIDDLE & CO. v. MANDEVILLE AND JAMESSON.

The endorsee of a promissory note, in Virginia, may recover the amount from a remote endorsor, in equity, though not at law.

Equity will make that party *immediately* liable who is *ultimately* liable at law.

The remote endorsor has the same defence in equity against the remote endorsee as against his immediate endorsee.

The defendant has a right to insist that the other endorsors be made parties.

ERROR to the circuit court for the district of Columbia, sitting at Alexandria, in a suit in chancery, brought by Riddle & Co. against Mandeville and Jamesson, remote endorsors of a promissory note, dated March 2, 1798, at sixty days, for 1,500 dollars, drawn by Vincent Gray, payable to the defendants or order, and by them endorsed in blank. Upon its face it was declared to be negotiable in the bank of Alexandria. The note so drawn and endorsed was by Gray put into the hands of a broker who passed it to D. W. Scott for flour, which he sold for 1,200 dollars in cash, and paid the money to Gray. Scott passed it, without his own endorsement, to M'Clenachan in the purchase of flour, and M'Clenachan endorsed it to Riddle & Co. the complainants, in payment of a precedent debt; Gray failed to pay the note, and was discharged under the insolvent act of Virginia, upon an execution issued upon a judgment in favour of the complainants upon the same note. The complainants then brought a suit at law against the defendants upon their endorsement, and obtained judgment in the court below, which was reversed in this court, upon the principle that an endorsee cannot maintain a suit at law against a remote endorsor of a promissory note. 1 *Cranch,* 290. Whereupon the complainants brought the present bill in equity, which was decreed to be dismissed in the court below; that court being of opinion that there was no equity in the bill. From that decree the complainants appealed to this court.

The only facts stated in the bill were, that Gray made the note payable to the order of Mandeville and Jamesson, who put it in circulation. That it was afterwards delivered and transferred, for a valuable consideration, to M'Clenachan, who, for a

valuable consideration, endorsed and transferred it to the complainants. That Gray failed to pay it, and was discharged from execution under the insolvent act, whereby the complainants were unable to recover from him any part thereof; in consequence of which the defendants became liable in equity to pay the same, but have refused so to do.

Among the interrogatories contained in the bill, it is asked " with what view was the note made and endorsed?" and whether one of the defendants did not, upon inquiry, declare that the note was good, and would be punctually paid?

The defendants pleaded the judgment at law in their favour in a suit brought upon the same note, in bar of the relief in equity.

To this plea the complainants demurred, and the court sustained the demurrer, and ruled the defendants to answer.

The answer states, that the note was endorsed by them for the purpose of being discounted at bank for the use of the collector's office, in which Gray was the chief clerk or deputy, and had the whole management of the business. That the defendants refused to endorse it until Gray promised to deliver to the defendants, as security, their bond to the United States, given for duties, to the amount of 1,168 dollars, which he never did, and they had to pay it. That they never received any value from any person for their endorsement; that they never gave circulation to the note, otherwise than by endorsing it and delivering it to Gray to be discounted at bank, for which purpose only they endorsed it. They deny that they ever made any contract with any person touching the note, and say they have no recollection of any conversation with any person respecting the note before it became due.

The deposition of D. W. Scott stated, that he gave 200 barrels of flour for the note, but before he

concluded the bargain, he asked Jamesson, one of the defendants, if the note was good, and whether there was any objection to it, and informed him it was offered to him for flour. Jamesson told him it was a good note, and observed that whenever he saw the name of Mandeville and Jamesson on any paper he might be sure it was good. That Scott sold the note to M'Clenachan for 207 barrels of flour, but did not endorse it, and it was expressly agreed that he should not be answerable for it in any event.

The deposition of M'Clenachan stated, that before he would take the note of Scott, he informed Jamesson that he intended to deal for it, and inquired whether it was an accommodation note, or a note given upon a real transaction. Jamesson told him it was a real transaction note, and not an accommodation note, and that it would be punctually paid. The deponent further stated, that the complainants had released to him all claim on account of the note, and of the debt intended to be paid by the note ; and that he had also been discharged under the bankrupt act.

These witnesses were objected to by the defendants as interested.

*E. J. Lee*, for the plaintiffs in error.

1. The court below did right in overruling the plea in bar.

Where, by the principles of law, a party has a right, but the forms of law do not give a remedy, a court of equity will grant relief. *Mitf.* 103. And in some cases it has a concurrent jurisdiction with the courts of law. *Mitf.* 108, 109. 3 *Atk.* 215. 1 *Fonb.* 204.

2. The court below erred in dismissing the bill.

The plaintiffs are entitled to recover in equity against the defendants. It was the intention of the

defendants to make themselves responsible to any person who should be the holder of the paper. They intended it to be a negotiable instrument. This appears from the note itself, which is expressly made negotiable in the bank of Alexandria, and from the answer of the defendants, who state that they endorsed it for the purpose of being discounted at the bank. Their endorsement was intended to give credit to the note. If they did not intend to become responsible, they were guilty of a fraud. The complainants, upon the credit of the note, granted indulgence to M'Clenachan. The defendants were undoubtedly answerable at law to M'Clenachan. That liability was a *chose in action* which he had a right in equity to assign, although this court has decided that it was not assignable at law. 1 *Atk.* 124. 1 *Fonb.* 201. 204. 1 *Term Rep.* 622. In the case of *Violet* v. *Patton*, at this term, this court has decided that a person who endorses merely to give credit to the note, is liable at law to his immediate endorsee. If the complainants had brought a suit in the name of M'Clenachan for their use against the defendants, a court of law would have protected the equity of the complainants. 2 *Skin.* 6, 7. 1 *Term Rep.* 622. *Winch* v. *Keely.* 4 *Term Rep.* 341. And if in such a suit the defendants had a set-off against the complainants, *Riddle & Co.*, a court of law would have allowed it. 2 *H. Bla.* 1271. *Bottomly* v. *Brooke.* 1 *Term Rep.* 621. If a court of law will recognise and protect an equitable assignment, *à fortiori* will a court of equity. In the case of *Harris* v. *Johnston*, (*ante, vol.* 3. *p.* 319.) this court said that " the holder of a note may incontestably sue a remote endorsor in chancery, and compel payment of it."

*Youngs*, contra, contended,

1. That the plea in bar ought to have been sustained. A judgment at law against a party in an equitable action of *assumpsit*, when all the facts are susceptible of proof at law, is conclusive against the jurisdiction of a court of chancery, if it ever had any. If a court of chancery and a court of law,

have a concurrent jurisdiction, an election to pro-
ceed in one concludes the party from going into the
other. If a person is under no legal obligation to
pay money, a court of chancery cannot compel him.
It can only enforce the performance of legal con-
tracts, and where there is no contract at law, a court
of chancery cannot make one. As no privity exists
at law between the holder and a remote endorsor,
that privity cannot be created by a court of equity.

2. That the court below was correct in dismissing
the bill.

The contract was usurious. A note for 1,500
dollars having only sixty days to run was sold for
1,200 dollars worth of flour.

There was no valuable consideration flowing to
the defendants; and such a consideration alone can
make an endorsor liable even to his immediate en-
dorsee.

The liability of the endorsor is not a complete
*chose in action*. A *chose in action* is a right of action.
No right of action exists against an endorsor of a
promissory note, in Virginia, until it is ascertained
that the money cannot be recovered from the maker.
Until that time it is a mere possibility, which is not
the subject of assignment even in equity. The
liability of the endorsor is not assignable under the
statute, and cannot be made so by a court of equity.

In the case of a joint obligation by principal and
surety, if the surety be discharged at law, he can
never be made liable in equity, for his equity is
equal to that of the obligee. 2 *Wash.* 136. *Harrison*
v. *Field.*

The note was endorsed by the defendants to be
discounted at bank. Gray committed a breach of
good faith, an act of fraud, in sending it into the
market.

The complainants can only claim as creditors of M'Clenachan. But they are no longer his creditors, having released him from the debt, according to his own deposition which they have produced.

If it should be compared to a letter of credit, it is a letter of credit to a particular person for a particular purpose. It is not like a general letter of credit.

*Swann* and *C. Lee*, on the same side.

The suit at law was decided against the complainants on account of a defect of right, not for want of a remedy at law.

The money in the hands of Gray was like any other property in his hands. If it had been a horse which Mandeville and Jamesson had transferred to M'Clenachan, with warranty, and M'Clenachan had sold the horse to the complainants, he could not have transferred to them the warranty of Mandeville and Jamesson. No case can be found in which a suit in chancery has been maintained against a remote warrantor of personal property.

The complainants demand the whole amount of the note; but in equity they can claim only what they paid for it; and how much that was does not appear. The endorsors must sue each other in succession. No case can be found where a holder has recovered in equity against a remote endorsor.

*C. Simms*, in reply,

In the case of *Violet and Patton*, this court has placed the liability of an endorsor upon a much more correct principle than that of privity of contract. It was there decided, that an endorsement was equivalent to a general letter of credit; if so, it enables any one to recover upon it who has parted with his property upon the faith of it. If A. gives a letter

KIDDLE
v.
MANDE-
VILLE.

of credit to C. and B. afterwards also gives a letter of credit to C., A. is not discharged from his liability because B. is also liable.

What was said by the chief justice in the case of *Harris* v. *Johnston*, cannot be considered as a mere *dictum*, but must be taken to be the deliberate opinion of the court, for it is the only answer given to a strong argument urged by the counsel for Johnston to show that the outstanding note was no bar to a recovery upon the open account, *viz.* that the defendant, being a remote endorsor, could never be compelled to pay the note. The answer of the court was, "It is supposed that the holder of a note may *incontestably* sue a remote endorsor in chancery, and compel payment of it." And during the argument of that case, when this idea was suggested by Mr. Jones, the chief justice said, "True; we shall consider that point. I have always been of opinion that in such cases a suit in chancery can be supported; though I do not recollect any case in which the point has been decided." When, therefore, the chief justice afterwards, in delivering the opinion of the court, repeats the same idea in stronger terms, it must be supposed that the point had been well considered, and that he spoke the opinion of the whole court.

*March* 13.

MARSHALL, Ch. J. delivered the opinion of the court as follows:

This suit is brought by the holder of a promissory note to recover its amount from a remote endorsor. In a suit between the same parties, this court had previously determined that the plaintiff was without remedy at law. It is now to be decided whether he is entitled to the aid of a court of equity.

If, as was stated by the counsel for the defendants, the question is, whether a court of chancery

would create contracts into which individuals had never entered, and decree the payment of money from persons who had never undertaken to pay it, the time of this court has been very much misapplied indeed in attending to the laborious discussion of this cause. The court would, at once, have disclaimed such a power, and have terminated so extraordinary a controversy.

RIDDLE
v.
MANDE-
VILLE.

But the real questions in the case are understood to be, whether the plaintiffs, as endorsees of a promissory note, have a right, under the laws of Virginia, to receive its amount from the endorsor on the insolvency of the maker; whether the defendants, as the original endorsors of the note, are ultimately responsible for it; and whether equity will decree the payment to be immediately made, by the person ultimately responsible, to the person who is actually entitled to receive the money.

This note came to the hands of M'Clenachan, endorsed in blank by Mandeville and Jamesson. M'Clenachan had a right to fill up the endorsement to himself, and he has done so. The law, as understood in Virginia, immediately implied an *assumpsit* from Mandeville and Jamesson to M'Clenachan to pay him the amount of the note, if he should use due diligence, and should be unable to obtain payment from the maker. M'Clenachan endorsed this note to the plaintiffs, and, by so doing, became liable to them in like manner as Mandeville and Jamesson were liable to him.

The maker having proved insolvent, the plaintiffs have a legal right to claim payment from M'Clenachan, and, on making that payment, M'Clenachan would be reinvested with all his original rights in the note, and would be entitled to demand payment from Mandeville and Jamesson.

If there were twenty successive endorsors of a note, this circuitous course might be pursued, and,

RIDDLE
v
MANDE-
VILLE.

by the time the ultimate endorsor was reached, the value of the note would be expended in the pursuit. This circumstance alone would afford a strong reason for enabling the holder to bring all the endorsors into that court which could, in a single decree, put an end to litigation. No principle adverse to such a proceeding is perceived. Its analogy to the familiar case of a suit in chancery by a creditor against the legatees of his debtor is not very remote. If an executor shall have distributed the estate of his testator, the creditor has an action at law against him, and he has his remedy against the legatees. The creditor has no action at law against the legatees. Yet it has never been understood that the creditor is compelled to resort to his legal remedy. He may bring the executor and legatees both before a court of chancery, which court will decree immediate payment from those who are ultimately bound. If the executor and his securities should be insolvent, so that a suit at law must be unproductive, the creditor would have no other remedy than in equity, and his right to the aid of that court could not be questioned.

If doubts of his right to sue in chancery could be entertained while the executor was solvent, none can exist after he had become insolvent. Yet the creditor would have no legal claim on the legatees, and could maintain no action at law against them. The right of the executor, however, may, in a court of equity, be asserted by the creditor, and, as the legatees would be ultimately responsible for his debt, equity will make them immediately responsible.

In the present case, as in that which has been stated, the insolvency of M'Clenachan furnishes strong additional motives for coming into a court of chancery. Mandeville and Jamesson are ultimately bound for this money, but the remedy at law is defeated by the bankruptcy of an intermediate endorsor. It is only a court of equity which can afford a remedy.

This subject may and ought to be contemplated in still another point of view. It has been repeatedly observed that the action against the endorsor is not given by statute. The contract on which the suit is maintained is not expressed, but is implied from the endorsement itself, unexplained and unaccompanied by any additional testimony. Such a contract must, of necessity, conform to the general understanding of the transaction. General opinion certainly attaches credit to a note, the maker of which is doubtful, in proportion to the credit of the endorsors, and two or more good endorsors are deemed superior to one. But if the last endorsor alone can be made responsible to the holder, then the preceding names are of no importance, and would add nothing to the credit of the note. But this general opinion is founded on the general understanding of the nature of the contract. The endorsor is understood to pass to the endorsee every right founded on the note which he himself possesses. Among these is his right against the prior endorsor. This right is founded on an implied contract, which is not, by law, assignable. Yet if it is capable of being transferred in equity, it vests, as an equitable interest, in the holder of the note. No reason is perceived why such an interest should not, as well as an interest in any other *chose in action*, be transferible in equity. And if it be so transferable, equity will of course afford a remedy. The defendant sustains no injury, for he may defend himself in equity against the holder as effectually as he could defend himself against his immediate assignee in a suit at law.

The case put, of the sale and delivery of a personal thing, is not thought to be analogous to this. The purchaser of a personal thing does not, at the time of the contract, look beyond the vendor. He does not trace the title. It passes by delivery. But suppose the vendor held it by a bill of sale containing a warranty of title, and should assign that bill to his vendee; is it clear that, on loss of the property for defect of title, no recourse could

be had to the warrantor of that title ?    The court is not prepared to answer this question in the affirmative.

It is contended that the endorsee of the note holds it subject to every equity to which it was liable in the hands of the endorsor.

If this be admitted, it is not perceived that the admission would, in any manner, affect this case:

It is also contended that the plaintiff can only recover what he actually paid.

Without indicating any opinion on this point, the court considers it as very clear that the endorsement is *prima facie* evidence of having endorsed for full value, and it is incumbent on the defendant to show the real consideration, if it was an inadequate one.

Usury has been stated in the argument, but it is neither alleged in the pleadings, nor proved by the testimony.

It is urged that Mandeville and Jamesson are securities who have received no actual value, and that equity will not charge a security who is discharged at law.    In support of this argument the case of a joint obligation is cited.

It is true, that, in the case of a joint obligation, the court has refused to set up the bond against the representatives of a security.    But, in that case, the law had absolutely discharged them. In this case, Mandeville and Jamesson are not discharged. They are not released from the implied contract created by the endorsement. It is the legal remedy which is obstructed; the right is unimpaired, and the original obligation is in full force.

It is, then, the opinion of this court that, without referring to the depositions to which exceptions have been taken, a right exists in the holder of a pro-

missory note, at least where he cannot obtain payment at law, to sue a remote endorsor in equity.

Certainly, in such a case, the defendant has a right to insist on the other endorsors being made parties, but he has not done so; and, in this case, the court does not perceive that M'Clenachan is a party so material in the cause, that a decree may not properly be made without him.

The decree is reversed, and the defendants directed to pay the amount of the note to the plaintiffs.

The decree of the court was as follows:

This cause came on to be heard on the transcript of the record of the circuit court for the county of Alexandria, and was argued by counsel. On consideration whereof, the court is of opinion, that the decree of the said circuit court, dismissing the bill of the plaintiffs, is erroneous, and ought to be reversed; and this court doth reverse the same; and this court, proceeding to give such decree as the said circuit court ought to have given, doth decree and order, that the defendants pay to the plaintiffs the sum of 1,500 dollars, that being the amount of the note in the bill mentioned, together with interest thereon from the time the same became due.