Cusía, per
ColcocK, J.
In the argument, the general power of the Court to grant relief in such cases as the present is not. denied. But it is contended that, in this particular case, the bond should not have been set up and charged- on the estate of Edward Trescot; because the complainant, being of full age and of perfect mind, disposed of her rights, and received what she thought a sufficient consideration; and that, at all events, a preference should not have been given to the complainant’s demand over those of the creditors of the legatees.
The first inquiry presented is, whether the demand of the complainant is a just one and' unpaid1? And as to this we are relieved from any difficulty, for the answers of the defendants admit all. that is stated by the complainant on that point. That she held the bond of Edward Trescot, and that there is still due to her a large balance on that debt. It is also apparent, that the debt being chargeable on the estate of Edward Tres-cot each of the defendants were liable for a part of it. Tor if the house which had been allotted to Henry *429 Trescot, as his portion, had been sold, he would have had an undoubted right to call on his co-legatees for contribution; as the payment of the debt would have diminished his portion by so much as the debt amounted to. The removal of the debt then operated as a benefit not only to Henry but to all the heirs. And it was given up by the complainant under the belief, that each of the legatees would become bound to her for his respective share. This impression was certainly made on her mind; and all the circumstances of the case warranted her in believing that it would be carried into effect. It is not important, that the conduct of Henry should be considered as fraudulent; for if he acted under an honest mistake the complainant is equally entitled to relief. If he alone had been benefited by the act, perhaps the complainant would have been bound to look to him alone for compensation. But it would never be permitted that those, who are benefited by the fraud or mistake of another, should be allowed to retain the benefit because they did not participate in the fraud or mistake. It has been urged that there is no proof against the rest. It is true the answer of one defendant is not evidence against his co-defendant; but his answer is evidence of what he thought, and that he ■ made the representation to the complainant; and I think that all the circumstances of the case, taken in connection with the testimony of Mr Bentham, would well warrant a belief that such an arrangement had been agreed on. For he says he was employed by all the parties to settle the accounts. They were perused by George, Henry, and Mrs Caroline C. the administratrix of John, and Charles Carrier her brother, and that the object was to bring about an amicable adjustment, and to settle the bond of Edward Trescot. The Court are, therefore, unanimously of .opinion, that the decree of the Chancellor be so far affirmed, as that the receipt on the bond be *430 cancelled, and the bond again established as a claim agajnst estate of Edward Trescot.
An order for distribution before the debts are paid will not be made unless the executors are secured.
The representatives of an executor or administrator are liable for a devastavit committed by the former; and that even as to an executor de son tort.
But the Court are not prepared to say that the complainant’s demand shall have a preference over the claims 0f the creditors of the legatees; nor is it necessary that the point should be determined; for there is no evidence before the Court, at present, which shews that there will be any deficiency of fund to pay the debt; nor are the creditors before the Court. The decree of the Chancellor on that point is therefore overruled.
Before I proceed to the consideration of the other' grounds and arguments made in the case, I must premise that so much of the second ground as states “ that the balances against the executor John S. Trescot were created by the act of the Court itself, in forcing a partition of the estate before the debts were paid or the estate settled,” is, to say the least of it, altogether gratuitous; for there is no evidence to support the charge of so much inconsistency in the Court; and it cannot be Supposed that an order for a distribution would ever have been made by any Court, had the executor stated that there were still outstanding debts. At all events such an order never would have beén made without securing the executor from all future liabilities. Under this head it was contended, that in no event could the estate of John S. Trescot be made accountable for any mal-admin-istration on the estate' of Edward Trescot; because if he had committed a devastavit, it was a personal wrong and died with him, and his executor or administrator could not be made answerable, and 1 Salk. 314, was referred to in support of the position. It could not have been expected that such a doctrine would have been advanced at this day. That this was the old doctrine is well known, but it was one so fraught with mischief, that the statute of 30 Charles II. c. 7, and that of 4 and *431 5 of William & Mary, c. 24, sec. 12, (both of which are made of force in this state) were passed for the express purpose of remedying the mischief; and by those statutes the executor of an executor or administrator, and the administrator of an executor, are made liable to an action for a devastavit committed by the first executor or administrator. But even before these statutes were passed the Court of Equity made the estate of an executor (and that too of an executor de son tort) liable. In 2 Modern Reports, page 293, (case 171, Anonymous) a case tried in the Exchequer Chamber, the Lord Chancellor said, the executor of an executor de son tort is not liable at law, though he would help the plaintiff here. And in the case of Price v. Morgan and Evans, 2 Chancery Cases, 217, tried in 1637, the Lord Chancellor declared he would grant relief; and with a prophetic spirit he added, that the common law would comé to it at last. His words are — “ although by the common law, when the executor wastes, his executor shall not be liable, because it is a personal wrong, it is otherwise here, and the common law will come to it at last. Therefore whatever estate of Gyles is come to Elizabeth, or to the hands of William, which William her testator wasted, the personal estate of William in the hands of his executrix shall answer.”
Where lega-ceived their" portions be-the debts have been mayfile his bill against the executor and legatees !JOth for an account.
The second ground concludes with submitting, that the Chancellor ought to have decreed that the heirs who had received the amounts (and who were all parties) : should reiund their respective sums with interest, and not the executor who paid them. It was certainly not necessary, nor had the Chancellor sufficient evidence ~ j before him to enable him, to make any specific decree against any one of the defendants, and therefore this part of the decree is considered as reversed. Such may possibly be the result when all the accounts shall be made out between the parties, as in Stiddolph v. Leigh, *432 2 Vern. 76, and in l Desaus. Rep. 304. But this Court wjjj n0 more present than order that the accounts of all the defendants, with the estate of Edward Tres-co^j as weH as the claim -of the complainant, be referred to the Commissioner to be examined and adjusted, and that he report the amount of complainant’s demand, and how much, if any, remains of the estate of Edward Trescot unadministered, in the hands of either Henry Trescot the administrator de bonis non, or in the hands of Caroline C. Trescot the administratrix of John S. Trescot, who was. the executor of Edward Trescot.
But it was further urged on the part of the defendant, that a creditor of an estate could not maintain a bill against the legatees or distributees of an estate until the executor or administrator had first accounted; and the reason assigned is, because if one creditor is permitted to do so, all the rest may likewise sue. This reasoning is by no means conclusive or satisfactory, because it may be answered, that if a legatee or distributee will take his share before the debts are paid, he knows that on a deficiency of assets the estate in his hands may be pursued, and he does an act by which he subjects himself to be sued, and therefore has no right to complain; and further, because it seems unjust to counsel an honest creditor to expend his money in calling on an insolvent executor, as may be the case, to account and make good his administration, when ultimately the legatees or dis-tributees must pay his debt. A better' reason, however, is. that there may be funds in the hands of the executor not administered, which ought first to be applied, and the insolvency of the executor ought to appear before the representatives are made' to pay. - It must be admitted, that the position of the defendants’ counsel is generally correct, yet there may be cases in which it would be departed from; as where there was collusion between the executors and legatees, as is expressly said by *433 the Lord Chancellor in the case of Doran v. Simpson, 4 Ves. 664; or, as in a case like the present, where the complainant does not rely alone on a special agreement, or promise to pay.
The geneval ™tor must but there are excep*
But the bill is not against the legatees alone; it is against the representatives of the estate of E¿hoard Trescot, as well as against the legatees: and the circumstance, that the representative of the estate of Edward Trescot is one of the legatees does not alter the case; as he is called on, in both capacities, to answer. And it is perhaps the most convenient way of proceeding to .file the bill against both executor and legatees; as indeed appears to be more frequently done.,
The principle that the executor must first account has been long and well established here; but it appear, by a reference to the cases, that a suit against both has been frequently permitted: as in the case of The Surviving Executors of B. Elliot v. John Drayton Trustee, T. Drayton Administrator of Glen Drayton, and Edward Lynah Administrator of B. Elliot, 3 Desaus. Rep. 29. 2 Fonbl. 372, note (h), book iv. part i. c. 2, §, 5. 3 Cranch, 220. 228. 5 Cranch, 322. 330(1).
It is therefore ordered and decreed that the receipt on the bond given by the deceased Edward Trescot be erased; and that the bond be re-established as an existing debt against the estate of Edward Trescot deceased ; and that the same be paid out of the unadminis-tered estate of Edward Trescot (if any such there be), either in the hands of the administrator de bonis non, or in the hands of the administratrix of John S. Trescot. But if there be no such funds, then by contribution by the legateés of the said Edward Trescot; each paying his proportion of the debt; and that all the accounts of *434 the defendants be referred to the Commissioner for exam¡nation and adjustment; and that he do report if there be any part of the estate of Edward Trescot unadminis-tered 5 and also that he do ascertain and report the amount of the claim of the complainant; and that the costs of suit be paid in the same manner as the debt is to be paid.

Decree modified.

 See ante, p. 318, the case of Gregory’s Ex. v. Forrester.