Brown, District Judge.
On the discharge of a cargo of sugar in New York in March, 1892, brought by the Euripides from Havana, some two feet of water were found in her hold, causing considerable damage to the sugar, some of the bags being entirely empty, and some 2,500 partly empty or damaged. The above libel was filed to recover for this loss and damage.
The claimants contend that the loss occurred through a peril of the seas, in consequence of an unusually long and tempestuous voyage, during which a great deal of water was taken over her bows, which worked more or less down through the deck about the mast and ventilators into the two compartments below. The four-inch pipe from the water closet, leading to the ship’s side, was also found to have a hole in it of about an inch and a half in diameter, claimed to have been gnawed by rats, about 12 or 18 inches inside of the valve, which was a little inside of *162 the ship’s side, and through which additional water worked its way. The ship’s pumps ceased to bring any water some five or six days after the vessel sailed, and no considerable amount of water was suspected to be aboard until her arrival in New York. Subsequent examination showed that the pumps had got filled up solid at the bottom by candied treacle and greasy matter from the bilges. The vessel sailed on February 17th. No heavy weather was experienced till the 19th; and from the 22d to the 28th was continuous heavy weather. She arrived in New York on March 3d.
I have considerable doubt whether the hole shown in the pipe was gnawed by rats. Although one rat was seen, there are no other indications of rat damage, nor of any considerable number of rats aboard. The amount of water taken in from the deck is shown to have been comparatively small. Three hundred bags is the highest estimate given at the trial of the number of bags damaged from this cause on the upper part of the cargo.' This number, or whatever number may be found to have been injured from water taken in from above, should be excluded, as caused by sea perils.
But the evidence does not indicate any such amount of water taken in in this way as to injure the cargo at the bottom, where most of the damage and loss arose. This must have come through the pipe, and should have been prevented by the valve; but the valve, also, was proved by Reilly to have been so battered as to afford insufficient protection.
Water in the hold ought to have been removed also by the pumps, before it had accumulated to such an extent as to touch the bags protected by proper dunnage and flooring; but the pumps would not work after the vessel was five or six days out.
It is not credible that the pumps could have got stopped up solid in so short a time, if they were properly cleared before the vessel sailed. After arrival the water was removed without difficulty by hand pumps. Nor am I satisfied that on so short a trip the water-pipe valve, if in proper order at the beginning of the voyage, could have become so much battered as to account for the amount of water found at the close of the voyage. The unavoidable inference from all the circumstances, it seerfis to me, is that both the pumps and the valves were in bad condition at the commencement of the voyage; and that when it was found that the pumps did not work, reasonable care was not exercised to ascertain the amount of water in the hold, or to remove it by other means, if the pumps were stopped. On both grounds the ship is liable to make good so much of the damages as did not arise from water coming in from above.
The original charter was a demise of the ship, and the charterers were in the position of owners pro hac vice. The India, 14 Fed. Rep. 476, affirmed, 16 Fed. Rep. 262; The Bombay, 38 Fed. Rep. 512. The sub-charter was not a demise of the ship, but a charter of affreightment only. For goods shipped under the subcharter the master, or the original charterers, or their authorized agent, the supercargo, had authority to sign any proper bill of lading, and that would bind the ship. This *163 was a common form of bill of lading and proper for the goods in question.
But the liability of the ship would be the same without any bill of lading. The original charterers undertook to transport these goods; this was done by the authority and consent of the ship owners, for such was the very object of the charter. The ship is, therefore, answerable for any negligence that causes damage to the goods, and is answerable to the shipper, orto his vendee, upon the implied contract to transfer safely, whether a bill of lading is issued or not. The Water Witch, 19 How. Pr. 241, affirmed 1 Black, 494; The Peytona, 2 Curt. 21, 27; The T. A. Goddard, 12 Fed. Rep. 184, and cases there cited.
Decree for the libelants, with costs, and an order of reference to compute the damages, if not agreed upon.