## THE EURIPIDES.

## AMERICAN SUGAR-REFINING CO. v. THE EURIPIDES.

(District Court, S. D. New York. August 22, 1894.)

1. SHIPPING—DAMAGE TO CARGO OF SUGAR—PRESUMPTIONS.

Where a bill of lading recites the shipment, in good order and condition, of a certain number of bags of sugar, weight unknown, and on arrival of the ship certain of the bags are empty, it will be presumed that they were full when shipped, and that their average weight was that of the lightest bags in the cargo, from which there is no reason to suppose that they differed, making allowance for the increased weight of such bags from absorption of water.

2. SAME—ACCURACY OF POLARISCOPE TEST—SAMPLING.

Samples of sugar, on which a test of damage by water to a cargo is made, will be held not to have been obtained with sufficient care to obtain the average degree of wetness, though an equal amount was taken from each bag, and the test was made on a sample taken from this, after being mixed by hand, where the samples were obtained, not by persons agreed on by the parties, or in the presence of the libelee's representative, but by the libelant's representative alone.

On Report of Commissioner. Libel by the American Sugar-Refining Company against the steamship Euripides for damages to sugar.

Wing, Shoudy & Putnam, for libelant.
Convers & Kirlin, for claimant.

BROWN, District Judge. On the reference to prove the damages for the loss and injury to the sugar for which the Euripides has been held liable (52 Fed. 161), the libelant was unable to prove the actual amount of loss of sugar, because it was found impossible to obtain proof of the weight at the place of shipment, the bill of lading containing an exception, "Weight unknown." The bill of lading, however, recites the shipment "in good order and condition" of "13,999 bags of centrifugal sugar, marked and numbered as per margin." There were only eight different marks, and all except three were of less than 1,000 bags each. Upon arrival, 88 bags were found empty, and 2,539 bags wet by sea water and apparently reduced in bulk. The sound bags and the damaged bags were weighed here. The sound bags, numbering over 11,000, weighed

on the average about 330 pounds each; the damaged bags about 314 pounds each. This evidence, even in the absence of proof of the exact weight of each bag at the place of shipment, was sufficient to show beyond any reasonable doubt that there was at least some actual loss of sugar on the voyage for which the vessel should account, besides what was contained in the 88 empty bags; but as proof of loss of weight was abandoned before the commissioner, except as to the 88 empty bags, only the latter can be here considered.

For the 88 empty bags, at least the average weight of sugar in the 314 damaged bags should be allowed. The vessel is not entitled to the benefit of the possibility of having shipped 88 empty bags, when her bill of lading declares them to have been shipped "in good order and condition," as "bags of sugar." There is no exception in the bill of lading that relieves her of whatsoever those words reasonably imply; and those words mean not empty bags, but bags of sugar in the usual "good order and condition;" i. e. not half empty, nor a quarter empty, but in the usual good condition, that is to say, full bags. Deducting from the average weight of the 2,539 damaged bags weighed here (from which there is no reason to suppose the 88 materially differed), $3\frac{1}{2}$ per cent. for water absorbed by those bags, as indicated by the depreciation in quality reported, we have 303 pounds to the bag, or 26,664 pounds in all, for which the vessel should respond for loss of the 88 bags.

For the purpose of proving the damage to the sugar remaining in the 2,539 bags, considerable evidence was given as to the polariscope test of the sound and of the damaged sugars. If this test is properly applied, that is to say, if the small quantity submitted to the chemist for analysis has been fairly taken, so as truly to represent all the sugar damaged, this method exceeds in precision any other known method of determining the actual damage. This test has been adopted by legislation; it is now in ordinary commercial use, and it was referred to with approval by Mr. Justice Bradley, in Merritt v. Welsh, 104 U. S. 694. This method determines accurately the amount of saccharine matter per pound. If the sugar has become wet with sea water, the weight of a given quantity of sugar is increased in proportion to the water absorbed; and a given weight of the mixture will therefore necessarily show a polariscope grade comparatively lower. In the present case, a small sample was taken by samplers from every bag, by means of a sampling tube; all the samples taken from the damaged bags were placed upon a table together; the whole quantity thus taken out was then mixed together by hand, and a few pounds then taken from the whole and sent to the chemist for analysis. The result showed a polariscope test of 89.6 for the damaged sugar, while the sound bags, sampled and tested in a similar manner, showed 96.6. This difference upon the ordinary market rate of computation would amount to 7-16 of a cent per pound, besides 3-32 of a cent per pound usually added for impurities.

The commissioner in his report declined to adopt these results, because he was not satisfied as to the accuracy of the witnesses'

testimony, as to their method of sampling, or as to the care taken by them to obtain true and proper samples of the damaged sugar for the chemist's analysis.

On the whole, I am inclined to sustain the commissioner's ruling in this respect, although not because there is any evidence, or any special reason in this case to believe, that there was any intentional unfairness in selecting the samples from the damaged bags; but it is obvious that the samples would be inferior to the average, either if the samples were drawn from the wetter parts of the bag, or if the wetter parts drawn out were not thoroughly mixed with the drier parts upon the table. The liability to considerable error is obvious, unless special care was taken to draw the samples fairly from the bags, and to mix them thoroughly, before the final drawing of samples from the table for the chemist. The practice in other cases of marine damage requires that reasonable protection be afforded to the other side against either mistake or intentional exaggeration of damages, by giving an opportunity to the other side to be present at surveys and examinations. After these sugars were sampled, they went into immediate process of refining, and there was no further opportunity for examination. Had the samples been taken by samplers agreed upon by both parties, or by samplers appointed by each side, I should consider the polariscope test based thereupon of the greatest value and weight.

In the present case, however, the representative of the libelant in submitting the claim for damages, estimated the depreciation at $3\frac{1}{2}$ per cent., or one-half the amount indicated by the polariscope test, in connection with a claim for loss of weight. This depreciation was admitted by the defendant and adopted by the commissioner. To this item should be added the value of the 26,664 pounds, as the least presumable contents of the 88 empty bags above stated, with interest. With this modification the report is confirmed, and the other exceptions overruled.