## VITOZI v. BALBOA SHIPPING CO., Inc.
### No. 4245.

Circuit Court of Appeals, First Circuit.

Aug. 18, 1947.

Stephen S. Bean, S. H. Rudman and Schneider, Reilly & Bean, all of Boston, Mass., for appellant.

Theodore Chase, John A. Perkins and Palmer, Dodge, Chase & Davis, all of Boston, Mass., for appellees.

Before CLARK (by special assignment), MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

There is no genuine issue as to the facts we consider material to the decision in this case. They can be briefly stated.

■ The plaintiff, a resident of Brooklyn, N. Y., brought a civil action in the court below against the defendant, a Panamanian corporation, to recover for personal injuries, allegedly caused by a defective cargo winch, which he sustained while working as a longshoreman on the defendant's steamship Platano at a time when it was tied up to a pier in New York Harbor. The defendant answered with a general denial of the basic allegations of the plaintiff's complaint, and then moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, on the ground, inter alia, that it "was not in possession or control of the S. S. Platano on * * * the date when the plaintiff alleges he was injured, the said ship being at that time under a demise charter to the plaintiff's employer, the United Fruit Company." It filed supporting affidavits in accordance with the Rule and attached to one of them a copy of the demise charter party of the ship.[1] The court below granted the defendant's motion and entered judgment accordingly. The plaintiff thereupon took this appeal.

■ This is not a libel in a cause civil and maritime. It is a civil action brought to recover for a maritime tort—unseaworthiness allegedly existing at the time the defendant chartered the Platano to the United Fruit Company. We have, therefore, an action which could have been brought in the appropriate court of the State of New York by virtue of § 9 of the Judiciary Act of 1789, § 256 of the Judicial Code, 28 U.S.C.A. § 371, which saves "to suitors in all cases the right of a common-law remedy where the common law is competent to give it", but which was brought instead on the law side of the court below, there being the requisite diversity of citizenship and amount in controversy for

---

[1] It is clear, indeed it is conceded, that this is a true demise charter party in that by its terms the owner gave to the charterer "possession, command, and navigation of the ship" for a stipulated period of time. Reed v. United States, 11 Wall. 591, 601, 20 L.Ed. 220.

federal jurisdiction. See Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171; Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834, 11 A.L.R. 1145; Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927; Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 88, 66 S.Ct. 872, 90 L.Ed. 1099; Caldarola v. Eckert, 67 S.Ct. 1569.

■■■■ But it does not follow from the fact that an action of this sort is brought at law that the court is restricted to the enforcement of common-law rights. The right asserted is peculiar to the law of admiralty and "When a cause of action in admiralty is asserted in a court of law its substance is unchanged." Panama Agencies Co. v. Franco, 4 Cir., 111 F.2d 263, 266, quoted with approval in Seas Shipping Co. v. Sieracki, supra, 328 U.S. at page 89 footnote 5, 66 S.Ct. at page 875, 90 L.Ed. 1099.. That is to say, "The general rules of the maritime law apply whether the proceeding be instituted in an admiralty or common-law court." Carlisle Packing Co. v. Sandanger, supra, 259 U.S. at page 259, 42 S.Ct. at page 477, 66 L.Ed. 927. And maritime law is not state law but a body of federal law. In Knickerbocker Ice Co. v. Stewart, supra, 253 U.S. at page 160, 40 S. Ct. at page 440, 64 L.Ed. 834, 11 A.L.R. 1145, the Supreme Court on the basis of earlier opinions said that it accepted the following doctrine:

"The Constitution[2] itself adopted and established, as part of the laws of the United States, approved rules of the general maritime law and empowered Congress to legislate in respect of them and other matters within the admiralty and maritime jurisdiction. Moreover, it took from the states all power, by legislation or judicial decision, to contravene the essential purposes of, or to work material injury to, characteristic features of such law or to interfere with its proper harmony and uniformity in its international and interstate relations. To preserve adequate harmony and appropriate uniform rules relating to maritime matters and bring them within control of the federal government was the fundamental purpose; and to such definite end Congress was empowered to legislate within that sphere.

"Since the beginning, federal courts have recognized and applied the rules and principles of maritime law as something distinct from laws of the several states—not derived from or dependent on their will. The foundation of the right to do this, the purpose for which it was granted, and the nature of the system so administered, were distinctly pointed out long ago." See also Southern Pacific Co. v. Jensen, 244 U.S. 205, 215, 216, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900; Chelentis v. Luckenbach S. S. Co., supra, 247 U.S. at pages 381, 382, 38 S.Ct. 501, 62 L.Ed. 1171.

We turn, therefore, to the rules of admiralty law as developed by the federal courts for the solution of the question presented.

■■■■ It has been settled law in this country since The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, decided in 1903, that an owner of a ship is liable to indemnify seamen in his employ for injuries caused by the unseaworthiness of the vessel or its appurtenant appliances and equipment. Mahnich v. Southern S. S. Co., 321 U.S. 96, 99, 64 S.Ct. 455, 88 L.Ed. 561. And in 1946 the Supreme Court in Seas Shipping Co. v. Sieracki, supra, held that this traditional obligation of seaworthiness owed by a shipowner to his seamen extended to a stevedore or longshoreman who suffered injury while working on board the ship even though employed by an independent contractor. The question before us therefore narrows down to this: Was the defendant the "owner" of the Platano at the time the plaintiff was injured, in the sense of being the one who

---

[2] Article 3, § 2 and Article 1, § 8, respectively extending the judicial power "to all Cases of admiralty and maritime Jurisdiction", and giving Congress power "to make all Laws which shall be necessary and proper for carrying into Execution * * * all * * * Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

owed the obligation of seaworthiness? We agree with the district court that it was not.

Although there is little authority directly in point, such authority as there is supports the conclusion reached by the court below. Furthermore that conclusion seems to us required by application of general principles of admiralty law with respect to demise charters.

█ In a charter of this kind in which the owner surrenders entire control and possession of the vessel and consequent control over its navigation to the charterer, the latter becomes what is called the owner pro hac vice. That is to say "without any sale or purchase of the ship" the charterer becomes its owner for the term of the charter "with the character or legal responsibility of ownership." Reed v. United States, 11 Wall. 591, 600, 601, 78 U.S. 591, 600, 601, 20 L.Ed. 220. Differently expressed, the charterer under a demise charter party becomes the "owner of the vessel chartered for the voyage or service stipulated, and consequently becomes subject to the duties and responsibilities of ownership." Leary v. United States, 14 Wall. 607, 610. 81 U.S. 607, 610, 20 L.Ed. 756. See also United States v. Shea, 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403.

Certainly if under federal law a demise charter party casts the duties and responsibilities of ownership upon the charterer, under federal law it must cast upon him the duty and responsibility to see to it that the vessel is seaworthy during the term of the charter, even though it may not have been seaworthy at the time when the charter party was entered into. On this reasoning two courts in cases in point have held the shipowner not liable. In re New York Dock Co., 2 Cir., 61 F.2d 777; Muscelli v. Frederick Starr Contracting Co., 296 N.Y. 330, 73 N.E.2d 536. We consider these cases correctly decided.

If, however, we are in error in deciding the question of the defendant's liability as one of federal law, and the decision of the Supreme Court in the Caldarola case, supra, requires that its duty to the plaintiff be determined by the law of New York, our decision nevertheless would be the same. The reason for this is that the New York Court of Appeals in the Muscelli case indicated that the result it there reached was required by the law of New York as well as by federal law, and furthermore, in the Caldarola case, [67 S.Ct. 1570] the Supreme Court said: "In any event, whether New York is the source of the right or merely affords the means for enforcing it, her determination is decisive that there is no remedy in its courts for such a business invitee[3] against one who has no control and possession of premises."

The judgment of the District Court is affirmed.

---

[3] A longshoreman on a ship employed by an independent contractor.