## CANNELLA v. LYKES BROS. S. S. CO.
### No. 198, Docket 21222.

United States Court of Appeals
Second Circuit.
April 27, 1949.

Rehearing Denied May 31, 1949.

Before L. HAND, Chief Judge, and CHASE and FRANK, Circuit Judges.

Nathan Baker, of New York City, for appellant.

Arthur M. Boal and Tompkins, Boal & Tompkins, all of New York City, for appellee.

L. HAND, Chief Judge.

The plaintiff appeals from a judgment, setting aside the verdict of a jury in his favor, and dismissing his complaint in an action to recover for personal injuries incurred while boarding a ship of which the defendant was the owner. The plaintiff testified that the injury happened because of the breaking of the wooden rung of a Jacob's ladder which led to the ship's deck from a barge, moored alongside the ship. He was a longshoreman employed by a company with which the defendant had a contract to lade the ship, and he was going up the ladder to cross the ship's

deck and go ashore on the pier at which she was moored. The defendant had demised the ship by "bare-boat charter" to the United States, but was in possession of her, as operating agent, under the standard contract considered in Caldarola v. Eckert.[1] The complaint was in two counts: the first, based upon the unseaworthiness of the ladder; the second, on the defendant's negligence. The judge left it to the jury to say whether the defendant had been negligent in failing properly to inspect and replace the ladder; but set aside the verdict because he thought that the defendant was in no event liable for the condition of the rung under the authority of our decision in McGowan v. J. H. Winchester & Co.[2] We do not find it necessary to consider that question because we hold that there was no evidence to support a verdict of negligence against the defendant. It is true that the ladder was old, that the ropes were frayed, and that the bottom rungs were gone—apparently because they had been crushed by vessels coming alongside. However, the plaintiff did not fall because the ropes broke, or because there were no lower rungs, but because one of the rungs higher up gave way. The general condition of the ladder did indeed justify an inference that it had become unfit in the respects we have mentioned, and that it ought to have been examined. It may be that the defect in the rung would have been disclosed upon such an examination, but there was no testimony that it would, and, as the record stands, the failure to inspect had no connection with the injury.

The same considerations do not, however, dispose of the count for unseaworthiness. The ladder was clearly unseaworthy, since it broke in ordinary use, and, if the defendant had been in possession of the ship, as owner, and not under the operating contract, it would have been liable under the doctrine of Seas Shipping Company v. Sieracki.[3] In that case the Su-

preme Court decided that, quite independently of any warranty of seaworthiness, a shipowner was liable to a longshoreman who had been injured by the unseaworthiness of the ship. This, the court held, was not a consensual, but an imposed, liability; and indeed the opinion suggested that it had been a mistake ever to suppose that in origin the liability for unseaworthiness demanded any warranty, express or implied. In the case at bar the defendant was not in possession of the ship, as owner, when the plaintiff was injured; neither was it an "owner pro hac vice" by virtue of its possession under the operating contract.[4] Was there nevertheless a direct personal liability running from it to the plaintiff? Is that a proper corollary of Seas Shipping Co. v. Sieracki, supra;[3] and, if so, what are the limits of such a liability? In the only two cases where the question has come up, it must be owned that the answer has been "No."[5] (Our own decision in Re New York Dock Co.[6] was rendered before Seas Shipping Co. v. Sieracki, supra,[7] and for that reason has no bearing upon the question.) The argument in these cases was that, since the "bare-boat charterer" is liable, as "owner pro hac vice," the owner out of possession should not also be held, because, as we understand it, there is no personal relation between him and the longshoreman. If these decisions had held no more than that the owner-demisor is not liable for any unseaworthiness arising after the charter, we should altogether agree; but it is clear in the New York case, and it is probably also true in the First Circuit case, that the courts meant to go further and hold that the owner-demisor was also not liable for unseaworthiness existing at the time of delivery. In spite of the deserved authority of the two courts which have so decided, we are disposed to believe that a direct personal liability for unseaworthiness at the time of delivery is fairly to be inferred from Seas Shipping Co. v. Sier-

[1] 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968.

[2] 2 Cir., 168 F.2d 924.

[3] 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

[4] Caldarola v. Eckert, 332 U.S. 155, 67 S.Ct. 1569, 1571, 91 L.Ed. 1968.

[5] Muscelli v. Frederick Starr Contracting Co., 296 N.Y. 330, 73 N.E.2d 536; Vitozi v. Balboa Shipping Co., 1 Cir., 163 F.2d 286.

[6] 2 Cir., 61 F.2d 777.

[7] 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

acki, supra.[7] A puzzling preliminary question comes up: i.e., whether the rights and duties arising from the incident are determinable by the law of New Jersey—the ship having been moored to a New Jersey pier—or by the maritime law. There can be little doubt that, so far as anything remains of the dubious doctrine which had its origin in Southern Pacific Co. v. Jensen,[8] the maritime law would prevail; on the other hand, if that doctrine has entirely disappeared, the law of New Jersey alone may be relevant. In Seas Shipping Co. v. Sieracki, supra,[7] the court treated the maritime law as the measure of the owner's liability, and we should have no hesitation in assuming the same thing here, were it not for Caldarola v. Eckert,[9] which left the answer open, though it did hold that the interpretation of the "operating contract" was a federal question. If New Jersey law be the measure of the liabilities, we have yet to know whether the courts of that state will ex mero motu adopt the maritime law, as apparently the New York Court of Appeals did in Muscelli v. Frederick Starr Contracting Co., supra,[10] or whether they will apply the law regulating the duties to a "business guest." On the whole it seems to us that we should follow the rationale of Seas Shipping Co. v. Sieracki, supra, [11] and decide the appeal under the maritime law.

Our reasons for imputing to an owner-demisor a direct liability are that under the law as it now stands his position vis-à-vis a longshoreman, is so nearly the same as though he were subject to the liability which we do impute that its recognition demands no more than a few procedural changes. An owner, who has demised his ship, is not indeed liable to any one but the demisee under his warranty of seaworthiness for any loss or injury suffered during the demise. Such liabilities sound in contract and he has not made any contract with any one else. On the other hand, if the demisee has become liable to a third person because of an unseaworthiness existing at the time of the demise, the demisee may recover from the owner on the owner's warranty, whether the demisee is liable under his own warranty of seaworthiness, or under an imposed liability such as that to a longshoreman. Thus the ultimate liability rests upon the owner for any loss or injury occasioned by the ship's unseaworthiness at the time of delivery. If the demisee becomes insolvent or for any other reason is judgment proof, the longshoreman could probably join in one action the demisee and the owner; and at any rate he could accomplish the same result by two separate actions. Thus in final result to impose upon the owner-demisor a direct personal liability to a longshoreman for injuries resulting from an unseaworthiness antedating delivery, is to impose no greater loss than could be made to fall upon him as the law is. It would merely avoid a circuity of action.

Moreover, the similarities do not end with this. If the demisee becomes liable for breach of a warranty of seaworthiness, a maritime lien arises upon the ship, securing the obligee.[12] Regardless of whether such a lien arises when the demisee becomes liable for other default, we cannot doubt that one does arise, when, as here, the liability is imposed in lieu of a warranty of seaworthiness and upon the theory that, even when there is such a warranty, the resulting liability sounds in tort. Since the lien extends to unseaworthiness supervening after delivery, as well as to that already existing, the owner-demisor, so far as his ship will answer, is initially subject to a larger liability than he is subject to under the putative imposed liability, although in cases of supervening unseaworthiness the eventual loss would no doubt fall upon the demisee. Moreover, the putative imposed liability will expose the owner-demisor to no greater loss than

7 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.
8 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900.
9 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968.
10 296 N.Y. 330, 73 N.E.2d 536.

11 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.
12 The Euripides, D.C., 52 F. 161; The New York, D.C., 93 F. 495; Taylor Bros. Lumber Co., Inc., v. Sunset Lighterage Co., 2 Cir., 43 F.2d 700; Pioneer Import Corporation v. The Lafcomo, 2 Cir., 138 F.2d 907.

the value of the ship, except in cases when she is lost or is worth less value than $60 a ton, neither of which is likely in the class of cases with which we are concerned. This is true, because unless the unseaworthiness for which the owner-demisor is held liable under the imposed liability has not been "incurred without his privity or knowledge," he may limit the longshoreman's recovery to the value of the ship,[13] which is of course the measure of his loss under the lien.

This comparison of the position of an owner-demisor, if under Seas Shipping Co. v. Sieracki, supra,[14] he is subject to a direct personal liability to the longshoreman, with his position, if he is not, satisfies us that, as we have said, the imposition of such a liability is a reasonable corollary of that decision. We hold that the defendant was so liable, and upon a new trial the plaintiff may have his damages assessed by a jury, if he can satisfy them that the unseaworthy rung was on the ship, and in the same condition, when the defendant delivered her to the United States. However, it may be that he will not be able to make that proof; and if he cannot, another course is open to him. We have repeatedly held that, when the district court has jurisdiction over a cause of action both at law and in the admiralty, a suit upon it may be transferred from the law side to the admiralty side, and vice versa, without starting anew.[15] Since the ship became charged with a lien coextensive with the liability of the United States, as "owner pro hac vice,"[16] a suit to foreclose the lien was originally open to the plaintiff. It is still open, and he may move to change the action at bar into such a suit, if he be so advised. In that event he must, it is true, arrest the ship, and the case will be tried to a judge; but he will avoid the necessity of proving that the rung was on board, and unseaworthy, when the defendant delivered the ship to the United States. Whether this remedy is alternative to the other, we need not say; any more than how far a judgment in one suit would be conclusive in the other.

Judgment reversed; cause remanded for further proceedings not inconsistent with the foregoing opinion.

FRANK. Circuit Judge (concurring).

I agree unequivocally with Judge Hand's opinion. I think it well to add that his conclusion as to the liability in personam of appellant is in line with the doctrine of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440; see Restatement of Torts, § 388. The owner here seems to me to be in much the same relation to appellant as is the manufacturer of an automobile to a purchaser from a dealer who is an independent contractor.

CHASE, Circuit Judge (dissenting).

Perhaps I have failed to understand what my brothers have decided, but it seems to be such an extension of Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, by implication that I cannot agree. Apparently, avoidance of circuity of action is the prime motive which has induced them to go where I cannot follow.

Their path seems to rest on these assumptions: (1) the owner is liable over to the charterer because of an implied warranty of seaworthiness; (2) the longshoreman has a maritime lien on the ship in any case as a result of unseaworthiness; and (3) the owner's position is no worse, and perhaps better, if he is directly liable because he may be able to limit his liability.

However desirable it may be to simplify litigation, this decision seems to extend the owner's warranty of seaworthiness under a bare boat charter not only directly to longshoremen and, of course, to seamen,

---

[13] § 183(a, b), Title 46 U.S.C.A.

[14] 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

[15] United States ex rel. Pressprich & Son Co. v. James W. Elwell & Co., 2 Cir., 250 F. 939; Owens v. Breitung, 2 Cir., 270 F. 190, 193; Cory Bros & Co. v. United States, 2 Cir., 51 F.2d 1010; Prince Line v. American Paper Exports, 2 Cir., 55 F.2d 1053; O'Neill v. Cunard White Star, 2 Cir., 160 F.2d 446.

[16] American Stevedores v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011.

but to make it a warranty to them of initial seaworthiness during the period when the owner has no control over the vessel even though the charterer might have eliminated or mitigated the effect of an apparent defect existing at the time of delivery. See Williston, Contracts § 1078 at n. 9 and § 988; Sanford & Brooks Co. v. Columbia Dredging Co., 4 Cir., 177 F. 878. Apparently, this is hereafter to be so in this circuit even though any implied contractual warranty of seaworthiness has been negatived in express terms in the charter. Cullen Fuel Co. v. W. E. Hedger, Inc., 290 U.S. 82, 54 S.Ct. 10, 78 L.Ed. 189. But nothing to be gained by so doing away with circuity appears to justify such a result contrary to Vitozi v. Balboa Shipping Co., 1 Cir., 163 F.2d 286 and Muscelli v. Frederick Starr Contracting Co., 296 N.Y. 330, 73 N.E.2d 536.

Though the charterer may be liable to the appellant, the fact that the appellee was the charterer's agent does not make the appellee liable. McGowan v. J. H. Winchester & Co., 2 Cir., 168 F.2d 924. Nor is the appellee liable on the theory of Seas Shipping Co. v. Sieracki, supra. See Vitozi v. Balboa Shipping Co., supra. Even on the assumption that the owner would be liable over to the charterer for unseaworthiness existing at the beginning of the charter, I cannot believe that avoidance of circuity justifies the creation of this direct right against the owner. The availability of impleader should not be forgotten. See Federal Rules of Civil Procedure rule 14(a), 28 U.S.C.A. Cf. Riddle & Co. v. Mandeville and Jamesson, 5 Cranch 322, 3 L.Ed. 114.

I dissent.

### On Petition for Rehearing.

L. HAND, Chief Judge.

On petition for rehearing the defendant asks that at the new trial it may be allowed to put in evidence the demise of the ship by the defendant to the United States, which was not put in evidence before; and that we delete that part of our opinion in which we said that the plaintiff might, if so advised, proceed in the admiralty against the ship. The second point is well-taken; when we wrote our opinion, we overlooked the decision of the Supreme Court in The Western Maid,[1] which forbids the creation of a lien against a vessel while on demise to the United States. The petition in this aspect is granted.

■ The first request we deny. It is true that in deciding that the owner of a demised ship was directly liable to a longshoreman for injuries caused by her unseaworthiness at the time of the demise, we used, as part of our reasoning, the fact that the loss would eventually fall upon the owner by a circuity of action. The longshoreman could recover of the demisee under Seas Shipping Co. v. Sieracki,[2] and the demisee could recover of the owner under the warranty. That is the ordinary situation and we adduced it to support our conclusion that the owner's direct liability involved very little practical change in the end result. Cumulatively, we invoked the privilege of the longshoreman to proceed against the ship in rem. We did not mean, however, that the direct liability was confined to cases in which the longshoreman could in fact avail himself of both or of either of these procedures. It would be particularly inappropriate in a given case to take as a test, whether the owner had excused himself from the warranty of seaworthiness ordinarily implied. By hypothesis the longshoreman is not a party to that contract, or to any contract, with the owner; and the question is of a liability imposed in invitum because of the ship's unseaworthiness.[3] It would therefore be irrelevant if the defendant at bar were to prove that the demise had excused it from implied warranty. The petition in this aspect is denied.

---

[1] 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299.

[2] 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

[3] Seas Shipping Co. v. Sieracki, 328 U. S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. States.