## THE NEW YORK.

### (District Court, E. D. New York. April 12, 1899.)

1. ADMIRALTY PRACTICE—CLAIMANT'S BOND.

   Where, on motion of a libelant in rem, the court makes an order setting aside a sale of the libeled vessel under a decree entered at the same term in another suit, unless a bond is given by the claimant and he furnishes an ordinary claimant's bond, such bond is available to the libelant in case of his recovery.

2. MARITIME LIENS—NATURE OF VESSEL—BARGE.

   A barge, though without means of self-propulsion, is subject to a maritime lien for breach of a contract of hiring to the same extent as any other vessel.

3. SAME—LIEN OF CHARTERER FOR DAMAGES CAUSED BY UNSEAWORTHINESS—LEASE OR DEMISE OF VESSEL.

   If a vessel be let to a carrier for a voyage, or for a day, or other time, at an agreed price per day, with a warranty of seaworthiness, and with a stipulation that the hirer shall provide crew and everything for the purpose of her navigation, and if by her unseaworthiness a cargo received by the carrier for transportation is injured, and the damage is discharged by the carrier, he has a lien on the vessel for the amount of such damages, and may recover the same in an action in rem against the ship.

4. SHIPPING—CHARTERING OF VESSEL—IMPLIED WARRANTY OF SEAWORTHINESS.

   Where a vessel is chartered or let, there is an implied warranty on the part of the owner that it is seaworthy, and sufficient for the use to which it is to be devoted.

5. MARITIME LIENS—EFFECT OF PROVISIONS OF CHARTER PARTY—SUBROGATION OF CHARTERER TO LIEN OF CARGO OWNER.

   Where a charter party amounts to a demise or lease of the vessel, the owner surrendering to the charterer the entire possession and control, the latter takes the place of the owner, and becomes responsible as such to shippers for damages for injuries to the cargo, though the vessel remains liable therefor; and where, in discharge of his personal liability, he pays such damages, and they resulted from the fault of the ship,—as from her unseaworthiness,—he is subrogated to the lien of the cargo owner therefor, his relation to the ship as to such damages being that of surety.

6. SAME—INJURY TO CARGO—RIGHT OF CHARTERER TO ENFORCE.

   A charterer, as carrier, is so far the representative of the owner of the cargo that he may sue in his own name for an injury thereto, and may maintain an action in rem for such injury against the carrying ship where the cargo owner could do so.

7. ADMIRALTY JURISDICTION—MARITIME CONTRACT.

   An action for damages growing out of the breach of a contract for the hiring of a barge by reason of its unseaworthiness, which caused injury to the cargo while the barge was at sea on a voyage, is based upon a maritime contract, and is within the jurisdiction of a court of admiralty.

This was a libel in rem by Edward C. Smith and another, as receivers of the Vermont Central Railroad Company, against the barge New York, to recover damages for an injury to cargo, alleged to have resulted from the unseaworthiness of the barge.

Carpenter & Park and Robert D. Benedict, for libelants.

Hyland & Zabriskie and Nelson Zabriskie, for claimants.

THOMAS, District Judge. In September, 1895, the Vermont Central Railroad Company, of which the libelants are now receivers, entered into a contract with the claimant for the use by the said company of a barge, at an agreed price of $10 per day, which included the

services of the man furnished and paid by the owner of the vessel, who should accompany the barge during her use by the railroad company. In the preceding May an agent of the company·had examined the barge, and learned "what sort of a barge she was, as far as her capacity went, and that she would answer our purpose." ·The agent informed the claimant that the intended use of the barge was to carry general merchandise to New London, and that it might be desirable to put 1,000 tons on her, to which he stated that she was good for 2,000 tons. Nothing further was said with reference to her seaworthiness, and the barge was taken for six days, with the privilege of longer time. Pursuant to such agreement, the railroad company, who were carriers, received and used such barge for the transportation of goods for third persons between New York and New London; but on the first night of her use, and while being towed on the Sound, with fair weather, the upper seams of the vessel leaked to such an extent that water was admitted to the hold, and injured a cargo of coffee stowed therein. Her burden was less than 1,000 tons. For this injury the company accounted to the owners of the cargo, and libeled the barge for the damages thus necessarily paid. The original libel was filed in the Southern district of New York on the 26th day of March, 1896, and process was issued thereon, but upon the appointment of the present libelants as receivers such suit was not prosecuted further. Thereupon another action was brought in the same district by the libelants, on which process was issued on the 19th day of May, 1896, and the barge at the same time was seized. But it was discovered that she had been sold, on May 13, 1896, by the marshal of the Eastern district of New York, on process issued in the suit of Gray against the barge on a libel filed April 21, 1896, and that James McAllister, the claimant herein, who was in control and possession of the said barge, had purchased the same. Gray, the libelant in such action, was the master of the barge, acting under the orders of McAllister at the time the libel was filed and the sale had; but said Gray sued for damages as a seaman, and at that time McAllister owned an interest in the barge, and such suit was begun at his instance, and for the purpose of cutting off libelants' liens, and of acquiring title to the barge. Upon the discovery of the sale the libelants herein filed a libel in the Eastern district on May 29, 1896, and moved the court to set aside the decree and sale in the Gray suit, and upon the hearing of the motion on such date the court made an order that the sale should be set aside unless within five days. the claimant McAllister gave a bond in the sum of $2,000. Thereafter, on the 2d day of June, 1896, the respondent gave the usual claimant's bond. It was within the power of this court to set aside the sale at the time the motion was made therefor, quite irrespective of any inquiry as to the fraudulent and collusive nature of the Gray suit; and the court determined that it would set aside such sale, unless the claimant accepted the alternative condition by giving the bond, which he did. It is therefore considered that, if a cause of action exists against the claimant, recourse may be had to the bond so given.

It is urged further on the part of the claimant that the nature of the contract between the railroad company and McAllister was such that

there was no expressed or implied warranty of seaworthiness; and, even if there was such warranty, the libelant acquired no lien on the barge for breach thereof, and that, as a consequence, the present action in rem cannot be maintained. It is quite unimportant that the vessel is a barge, without means of self-propulsion. For purposes of admiralty jurisdiction, a barge is equivalent to a full-rigged ship, or the most important steamship. Disbrow v. The Walsh Brothers, 36 Fed. 607; Mosser v. The City of Pittsburgh, 45 Fed. 699. Therefore the question to be solved is this: If a steamship be let to a carrier for a voyage, or for a day, or other time, at an agreed price per day, with a warranty of seaworthiness, and with a stipulation that the hirer shall provide crew and everything for the purposes of her operation, and if by her unseaworthiness a cargo received by the carrier for transportation be injured, and the damage be discharged by the carrier, may the latter recover the damages thus incurred in an action in rem against the vessel by reason of a lien on the ship for the same? It will be observed that in the case put the fact that a man was placed on the barge is ignored. He was placed there for a general oversight of her condition, and, if the injury had occurred through his negligence, as it did not, his master would have been liable for the same. If this indicates any retention of the possession of the barge on the part of the owner, it is relatively unimportant to the present question. The broad, naked facts are preferred. The first step in the inquiry is this: Does the contract amount to a charter party? In a general sense, it does. A charter party is a specific contract, by which the owners of a vessel let the entire vessel, or some principal part thereof, to another person, to be used by the latter in transportation for his own account, either under their charge or his. An equivalent definition is given in Vandewater v. Mills, 19 How. 91. Mr. Parsons, in his work on Contracts (volume 3, p. 301), states: "The charter party might provide and express that the charterer hired the whole ship, and took it absolutely into his own possession, and manned, equipped, furnished, and controlled her during a certain period, or for a certain voyage;" although he states that such a contract is seldom made. It is in accordance with such definitions that a charter party is often called a "mercantile lease." Although in the case at bar there is a representation of seaworthiness equivalent to a warranty thereof, yet, if it were otherwise, an assurance amounting to a warranty is implied that the ship is sufficient for the use to which it is to be devoted (3 Kent, Comm. p. 205; Fland. Mar. Law, § 182; The Thames, 61 Fed. 1014; Work v. Leathers, 97 U. S. 379); and the care required of barges, at least as regards shippers, is emphasized in The Northern Belle, 9 Wall. 526. Charter parties have or omit terms which have an important influence upon the obligations and rights of the parties to them and those who contract with the charterer for the carriage of goods. The provisions as to manning a ship or controlling the crew are such that the owner in some cases is deemed to have surrendered and in other cases to have retained the possession of the ship during the continuance of the charter party. In cases of surrendered control and possession, the ownership, for the voyage, is in the hirer, at least as to all shippers who have not knowledge of the charter. Leary

v. U. S., 14 Wall. 607; The Northern Belle, 9 Wall. 526.    In Baumvoll Manufactur Von Scheibler v. Gilchrest [1892] 1 Q. B. 259, approved by the house of lords, Lord Esher said:

"The question [in that case whether an owner was liable for the acts of the captain of his ship] depends, when other things are not in the way, upon this: whether the owner has, by the charter, where there is a charter, parted with the whole possession and control of the ship, and to this extent: that he has given to the charterer a power and right independent of him, and without reference to him, to do what he pleases with regard to the captain, the crew, and the management and employment of the ship. That has been called a letting or demise of the ship. The right expression is that it is a parting with the whole possession and control of the ship."

Although the cases of demise are old cases, and their authority modified by the modern tendency against such constructions of charters, it will be assumed for the purposes of the present discussion that the case is one of demise or lease, which in fact is just what any charter party is. Now, how does this characterization of the charter as a demise change the relations of the parties? The first and obvious change is to make the charterer the apparent owner, and to substitute him for the owner in matters that involve personal liability. Hence he is accountable as owner to freighters, and the actual owner is not so accountable to the charterer or to the shippers, at least those ignorant of the charter, for acts of the master and crew, but shippers must look to the owner pro hac vice as the carrier. If the charterer hires the vessel, employs the master and hands, and bears the expenses of the voyage, he becomes the owner pro hac vice, and incurs all the personal liabilities which would otherwise have fallen on the owners. Sherman v. Fream, 30 Barb. 478; Macy v. Wheeler, 30 N. Y. 231, 241. Moreover, the actual owner, being out of possession, has no lien on the cargo for the freight due under the charter, or for the money agreed to be paid for the hire of the boat, which he would have otherwise. U. S. v. Taylor, 2 Sumn. 588, Fed. Cas. No. 16,442. The result of the inquiry to this point is this: The ship, for the time, has by the demise received apparently a new owner. The shipper traces personal liability, if any arises, to this new owner; and the relation of the actual owner to third persons who have to do with the ship is suspended. But the relation of the ship to the undertaking is precisely the same as before, and whenever she would be liable in rem if her real owner were navigating her she remains liable while under the control of the substituted and temporary owner. In 3 Kent, Comm. p. 218, this is expressed as follows:

"The ship itself, in specie, is considered as a security to the merchant who lades goods on board of her; and it makes no difference whether the vessel be in the employment of the owner directly, or be let by a charter party to a hirer, who was to have control of her. * * * The ship is bound to the merchandise and the merchandise to the ship."

The cargo owner has a lien on the demised ship. The Euripides, 52 Fed. 161. Indeed, the maritime law creates reciprocal liens between the ship and cargo. The Maggie Hammond, 9 Wall. 435. It follows that, if the ship is in collision, the action in personam against the temporary owner and in rem against the ship accrues in favor of third persons. If goods delivered to her for transportation are dam-

aged by the unseaworthiness of the ship, a like action in rem and in personam may be maintained. Such is the rule as to all charter parties. Dupont De Nemours v. Vance, 19 How. 162, 168; The Rebecca, 1 Ware, 187 (and see annotation of authorities to the head-note of the same case in 20 Fed. Cas. 373). In such case the real owner is not liable personally to the shipper for the loss, but the temporary owner as such is liable, and the ship is liable. Hence, in the present case, the cargo owner could have sued the Vermont Central Railroad personally and the ship in rem, and therefore through the real owner's breach of warranty the charterer has been placed in a position where he must, as regards the cargo owner, discharge the damages. Constrained by his personal liability, he does liquidate such damages. Thereupon he should be subrogated to all rights of indemnity which belong to the cargo owner for whose injury he has made compulsory compensation to escape personal liability. Such cargo owner had a lien upon the ship. It was security on which the shipper consigned his goods for transportation. To that lien the charterer succeeds, because he stood in the relation of a surety for the ship to the shipper, and the fault was not in reality that of the charterer, but that of the person actually owning the ship. In such case the charterer succeeds to the lien by virtue of the fact that he stood in the relation of an indemnitor, and has discharged his obligation. Hence the statement would be this: (1) The ship is liable in rem to the cargo owner for injury to the cargo for unseaworthiness, even though the charter be a demise; (2) the charterer personally is liable to pay the damages in case of a demise; (3) the fault is that of the real owner alone; (4) the charterer, to acquit himself of personal liability, pays the damages. Here, through the fault of her real owner, the ship is the offender, and the charterer, as apparent owner, is, as between him and the ship, a mere surety. He should, on payment of the cargo owner's demand, succeed to the latter's security, viz. a lien upon the vessel. Such was the holding, in effect, in The Jersey City, 43 Fed. 166, and the ruling is in harmony with equitable principles. It does not seem necessary to go further, and to point out by other reasoning that the barge in the present case is subject to a lien for the loss of goods from unseaworthiness. But the same conclusion may be reached by another course of argument. The carrier is so far the representative of the owner of the cargo that he may sue in his own name for injury to the goods carried. The extent to which this rule may be applied is illustrated in The Beaconsfield, 158 U. S. 303, 307, 15 Sup. Ct. 860. Therefore, where the cargo owners may maintain an action in rem against the carrying ship, the charterers, who are related to the cargo as carriers, may enforce the lien by an action in rem. From this there seems to be no logical escape. In addition, it is considered that it is not necessary to trace the charterer's right to a lien through the rights of the cargo owner. The precise question was decided in Wood v. The Wilmington, 5 Hughes, 205, 48 Fed. 566, where the controversy arose distinctly between the charterer and the owner, and it was held that for repairs of the ship, which it was the duty of the real owner to make, the hirer had an action in rem against the ship.

The learned advocate for the claimant, in his excellent presentation

of his case, relies upon The Daniel Burns, 52 Fed. 159, which involved a controversy over an alleged shortage of cargo. The contract between the parties was quite similar to that in the case at bar. The damages alleged were not due to any breach of the contract of letting, or any. act of the man placed on the barge, and the decision of the learned judge obviously was correct. The court in that case did not hold that a vessel demised for the carriage of cargo on the sea was not liable in rem for damage to cargo from unseaworthiness against which he had insured. Had the Burns proved unseaworthy, to the detriment of cargo, whether that of the charterer or of a third person, it may be asserted safely that it would have been adjudged that a lien for damage attached to the barge. Indeed, a survey of the facts in this case, in connection with the applicable law, illustrates that the present contract is maritime in every feature. It relates solely to a vessel for the carriage of goods on the sea by a common carrier. The goods were intrusted by the hirer to the vessel on the faith of the assurance of seaworthiness. The development of the injury by reason of unseaworthiness was on the sea. The carrier's liability to the cargo owner was measured by the maritime law. For such injury the cargo owner, whether the charterer or a third person, could maintain an action in rem for his damages against the offending barge. Hence, in respect to the subject-matter, in respect to the locality of the injury, which arose in the course of actual navigation on the sea, the case falls within the rules that give jurisdiction to the courts of admiralty. Of course, it is unimportant that the contract was actually made on land. Insurance Co. v. Dunham, 11 Wall. 1. In the last case the opinion, referring to the decision in Ferry Co. v. Beers, 20 How. 401, strongly intimates that the effect of the decision that a contract to build a ship is not a maritime contract was not to be extended by implication to later cases. Certainly, it should not be extended to a contract to furnish a seaworthy boat to carry goods on the sea, which is carried into effect, with the resulting injury to the cargo from unseaworthiness. It is apparent that the admiralty law in its several phases compels the conclusion that the barge was subject to a lien for the damage to the cargo, and that the usual remedy in rem obtains. The decree should be for the libelants, with costs.