INSURANCE CO. OF NORTH AMERICA v. NORTH GERMAN LLOYD CO.

(District Court, D. Maryland. December 12, 1900.)

1. LIGHTERS—SUBSTITUTE FOR VESSEL.

Where there is a contract to carry goods from one port to another, and they cannot be loaded directly on the vessel, and lighters are sent by it to bring the goods to it, the lighters are for the time its substitutes, so that the bill of lading is applicable to the goods as soon as they are placed on the lighters.

2. UNSEAWORTHINESS OF VESSEL—PRESUMPTION.

A lighter taking goods to a vessel when the water was still, having capsized, causing the loss of the goods, and there being no other explanation than that there was an ordinary swell from a passing steamer, there is a presumption of unseaworthiness.

3. SAME—DUTY OF OWNER.

The Harter act (27 Stat. 445, c. 105), providing by section 3 that if the owner of a vessel engaged in transporting merchandise exercise due diligence to make it in all respects seaworthy, and properly manned, equipped, and supplied, it or the owner shall not be liable for loss from faults or errors in navigation or in the management of it, or the dangers of the sea, does not lessen the owner's obligation to furnish a seaworthy ship at the inception of the voyage in respect to losses arising from causes other than those designated. It is not enough that he uses due diligence, but the ship must be seaworthy.

4. BILL OF LADING—STIPULATIONS—LIGHTERS.

A stipulation in a bill of lading that the carrier may convey goods in lighters to and from the ship at the risk of the owner of the goods does not apply to risks arising out of the unfitness of a lighter.

5. SAME.

If taking a cargo to a vessel in lighters be part of the loading of the vessel, a stipulation in the bill of lading relieving the carrier from failure to provide a fit lighter is prohibited by Harter Act (27 Stat. 445, c. 105) § 1, declaring it unlawful for the owner of a vessel engaged in transporting merchandise to stipulate against liability for loss from negligence in loading.

6. SAME—AMBIGUITY.

A stipulation in a bill of lading that "the ship is warranted seaworthy only to the extent that the owners shall exercise due diligence to make it so," being ambiguous and uncertain in its meaning, can have no effect.

In Admiralty.

Foster & Foster and John F. Lewis, for libelant.
Charles W. Field and Arthur George Brown, for respondent.

MORRIS, District Judge (orally). The case is this: Messrs. I. M. Parr & Sons, having contracted with A. Schumacher & Co., the Baltimore agents of the North German Lloyd Company, for the carriage of a quantity of corn in bulk from Baltimore to Bremen in one of the North German Lloyd steamships (the H. H. Meier), lighters were sent by the North German Lloyd Company to the Canton Elevator to bring the corn across the harbor to the steamship where she was lying at her dock. One of the lighters, after being loaded, upset when 200 or 300 feet distant from the elevator, and her load of corn was lost. The Insurance Company of North America, underwriters on the corn, paid the loss to Messrs. I. M. Parr & Sons,

and, having been subrogated to their rights, now sue the North German Lloyd Company, alleging that the corn was lost through its failure to perform its contract, and by the negligence of its agents. The answer of the North German Lloyd Company, the respondent, avers, for defense, that it employs lighters owned by others to convey grain from elevators to its ships in the harbor of Baltimore when it is not convenient to load directly into the ship itself; that in the present case it agreed to transport the corn from Baltimore to Bremen under the terms of the bill of lading customarily used by it under like circumstances, and subject to the terms, conditions, limitations, and exemptions contained in said bill of lading; that the corn was not received on board the H. H. Meier, but was lost by the upsetting of the lighter; that its loss was not caused by the negligence, default, or breach of contract of respondent or any of its agents or servants; and that the respondent is exempt by the terms and conditions of its bill of lading. I am aware of the importance of the correct decision of this case, but it has been very carefully presented, and I have been so fully assisted by the arguments of counsel and the citation of authorities that I shall proceed at once to dispose of it.

Since the case of Bulkley v. Cotton Co., 24 How. 384, 16 L. Ed. 599, it has been conceded, under circumstances such as are presented in this case,—that is to say, where the contract is to carry goods from one port to another, and they cannot be loaded immediately on the vessel which is preparing for the voyage, and lighters are sent by the vessel to bring the goods from the warehouse to the ship,—that, for the purpose of that service, the lighter is the substitute of the ship, and that the goods are in fact, therefore, delivered into the custody and care of the ship and her owners from the time that they are placed on the lighter. And, for the purposes of this case, I shall take it that the bill of lading which was intended to be the contract for the carriage was applicable to these goods, and determined the rights of the parties from the time that the corn was put upon the lighter.

The rule in admiralty is, when goods are placed aboard a vessel, and the vessel starts on her voyage, and within a short time, without any unusual occurrence of any sort arising, the goods are injured by the leakage of the vessel or its capsizing; that the presumption is that there was some unseaworthiness in the vessel at the inception of the voyage. This is a case in which that presumption is applicable. Every one who has testified in this case has stated that the corn was properly put aboard the lighter and properly loaded, and that she started apparently all right; that it was a fine day in midsummer, with the water smooth and no wind; that the lighter drifted from 200 to 300 feet from the end of the elevator wharf, and then she capsized. Such an occurrence calls for explanation if the lighter is to be exonerated. The only explanation offered by the respondent is that there was a swell from a steamer passing in the harbor, which rocked the barge and shifted her cargo, in consequence of which she overturned. It is to be noticed that of all the witnesses called by the respondent there is not one of them who says that the waves from

the Louise, if it was the Louise which was the passing steamer, were anything more than the ordinary swell from a steamer passing in the harbor. Of the colored lightermen, generally fair observers of such facts, the most intelligent, perhaps, was Chase, and he was not liable to be biased by any imputation of personal fault to him. He testified that he was watching the lighter, as it was natural he should be, because while he was helping to pull her out of the dock she had gotten adrift, and Bennett, who was in charge of her, was attempting to get aboard of her by the help of the tug; and al· though he saw, as he said, the passengers on the Louise were noticing the occurrence, he also testifies that he cannot say that the Louise made any swell of any account, and he is altogether unable to account for the upsetting of the lighter. And, of the masters of the tugs and other witnesses, there is not one of them who says that the waves created by the Louise were unusual, or that in themselves they were sufficient to account for any disaster to the lighter. There is, therefore, a failure on the part of the respondent to show that this disaster occurred through any unusual occurrence, or anything that could in any sense whatever be called a danger of the sea; and the result follows that it must have happened either because the lighter was unfit for the duty undertaken to be performed by it, or was leaking while she was at the elevator wharf, or had such a defect in her that the slight roll caused by the swell brought some defective portion of her under the water, and the water leaked in through the defect. There is no other explanation that suggests itself as possible. The ordinary swell from a passing steamboat is one of the most common things that lighters in the harbor have to encounter; and certainly a lighter which was not sufficient to withstand for a few minutes such a swell as was created on this morning, judging from the testimony of all the witnesses as to its extent, was unfit, for some reason or other, to perform the service of taking a load of corn across the harbor. A vessel, to be seaworthy, must be fit, in design, structure, condition, and equipment, to carry the cargo she has undertaken to transport; and, if she fails in any of these particulars, she is not seaworthy. This is not a case in which the libelant has the burden of showing exactly what was the defect. The libelant proves the circumstances of the loss. If these circumstances are sufficient to raise a presumption of unfitness of some sort on the part of the vessel, it is for the respondent to give such an explanation as shall exculpate the lighter. I am forced to the conclusion that the respondent has not done so in this case.

I now come to consider the Harter act, approved February 13, 1893 (27 Stat. 445, c. 105), and whether the character of this case is such that the respondent is exempt under that act. The Harter act, as I understand the decisions, has not altered the obligation of the owner to furnish a seaworthy ship at the inception of the voyage. The owner must show now, as he was obliged to show before the act of 1893, more than due diligence. He must show that the ship was in fact seaworthy; that is to say, really fit for the purpose. This, in substance, as I understand, is the result of the rulings in

the following cases: The Carib Prince, 170 U. S. 655–660, 18 Sup. Ct. 753, 42 L. Ed. 1181; The Irrawaddy, 171 U. S. 187–190, 18 Sup. Ct. 831, 43 L. Ed. 130; The Sylvia, Id. 462–464, 19 Sup. Ct. 222, 43 L. Ed. 241; The Caledonia, 157 U. S. 124–130, 15 Sup. Ct. 537, 39 L. Ed. 644; Knott v. Botany Mills, 179 U. S. 69–73, 21 Sup. Ct. 30, 45 L. Ed. ——; Farr & Bailey Mfg. Co. v. International Nav. Co., 98 Fed. 636.

The respondent, however, contends that, provided the owner of the lighter exercised due diligence to make her seaworthy, and if the bill of lading expressly exempts the respondent from liability for unseaworthiness at the commencement of the voyage, such an exemption is lawful; and as the respondent's counsel have urged that the exemptions in the bill of lading control the respondent's liability in this case, I have considered whether, if the contention were conceded, the language of the bill of lading would result in relieving the respondent for the loss in this case. The following stipulations in the bill of lading are relied upon by the respondent:

"(1) That the carrier shall have liberty to convey goods in lighters to and from the ship, and to discharge into lighters at the risk of the owner of the goods. (2) That the carrier shall not be liable for loss or damage occasioned by * * * any latent defect in hull, machinery, or appurtenances, even existing at the time of shipment or sailing on the voyage, provided the owners have exercised due diligence to make the vessel seaworthy. (3) It is also mutually agreed that the ship is warranted seaworthy only to the extent that the owners shall exercise due diligence to make it so."

As to the clause I have first mentioned, stipulating that the goods may be lightered at the risk of the owner: This clause, in conformity with decisions upon similar stipulations, must, I think, be held to refer to risks which are encountered notwithstanding the shipowner has complied with his duty of providing a lighter fit for the service, but not such as arise out of the unfitness of the lighter. The general rule is that an exception in a bill of lading ought, if possible, to be so construed as not to nullify the obligation of the shipowner to provide a vessel proper for the service undertaken. The Carib Prince, 170 U. S. 659, 18 Sup. Ct. 753, 42 L. Ed. 1181; Steel v. Steamship Co., 3 App. Cas. 72.

The present case has been argued upon the theory that the lighter was the substitute for the ship in receiving the corn, but if another view is taken, namely, that the lightering was part of the loading, stowage, custody, and care of the corn, then an exemption relieving the carrier from liability for fault or failure is forbidden by section 1 of the Harter act, and the failure to provide a fit lighter is a fault from which the vessel cannot contract for exemption. Calderon v. Steamship Co., 170 U. S. 272–276, 18 Sup. Ct. 588, 42 L. Ed. 1033. In this view of the case the failure to provide a fit lighter might be held a direct want of care in respect of the cargo, to which section 1 would be applicable. Knott v. Botany Mills, 179 U. S. 69–74, 21 Sup. Ct. 30, 45 L. Ed. ——.

The clause contained in the bill of lading which I have designated as No. 2 undertakes to release the carrier from liability for latent

defects in the hull, etc., even when existing at the time of the shipment, provided the owners have exercised due diligence to make the vessel seaworthy. In this case, although there is evidence to show that the owners of the lighter had exercised diligence to maintain the lighter in proper condition, there is no evidence to show that the defect, whatever it was, was a latent defect. That there was a defect, either in the design, structure, or condition of the lighter, is put beyond question by the upsetting itself without any sufficient cause. That it was a latent defect the respondent has not shown. In fact, no cause whatever has been shown, except the swell of the steamer Louise, and I am obliged to hold that the swell of the Louise would not have upset the lighter if it had been fit for the service.

The clause which I have designated as No. 3 stipulates that the ship is warranted seaworthy only to the extent that owners shall exercise due diligence to make her so. Assuming that this clause would be applicable to the lighter, it is not possible to say that its meaning is clear. It is easy to guess that the draftsman may have intended to say something to the effect that the owners should only be held to have warranted that they had exercised due diligence to make the ship seaworthy, or that they warranted her seaworthy only to the extent that by due diligence they could make her so, and not that she was actually seaworthy; but, if that was his meaning, he failed to express it, and, being ambiguous and uncertain in its meaning, it fails of having any effect whatever. Calderon v. Steamship Co., 170 U. S. 272–279, 18 Sup. Ct. 588, 42 L. Ed. 1033.

Without attempting to justify more fully the conclusion to which I have come, I must pronounce that the libelant has made out its case and is entitled to a decree. As to the amount and value of the corn lost, I am inclined to think that it sufficiently appears from the testimony at this hearing. If, however, counsel for the respondent are of opinion that there is necessity for a more careful ascertainment, I will send the case to a master to assess the damages.