### THE C. W. ELPHICKE.

(Circuit Court of Appeals, Second Circuit. April 9, 1903.)

No. 122.

1. SHIPPING—SEAWORTHINESS—REQUIREMENTS OF HARTER ACT.

A shipowner is not exempted by the Harter act from liability for damage to cargo resulting from her unseaworthy condition at the commencement of the voyage, although it is shown that he exercised due diligence to make her in all respects seaworthy.

2. SAME—DAMAGE TO CARGO.

Evidence *held* to sustain a finding that damage to a cargo of flaxseed from water on a voyage from Duluth to Buffalo resulted from the defective condition of the hatch coverings, which rendered the vessel unseaworthy at the commencement of the voyage, having in view the nature of the cargo, the time of the year, and the weather to be fairly anticipated.

Appeal from the District Court of the United States for the Western District of New York.

Appeal from a decree of the District Court for the Western District of New York in favor of the libelants.

The libel was filed by marine insurance companies to recover damages paid by them to the owner of a cargo of flaxseed, which was injured by water while being conveyed from Duluth to Buffalo by the steamship C. W. Elphicke, in November, 1896. The District Court found the ship liable in the sum of $3,331, with interest and costs. The claimant appeals. The opinion below will be found in 117 Fed. 279.

Harvey D. Goulder, for appellant.

George Clinton, for appellees.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. The facts are fully stated in the opinion of the District Judge and need not be repeated.

It is contended for the appellant that the exemption from liability provided for in the third section of the Harter Act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), is applicable to a ship unseaworthy at the inception of the voyage if it appears that her owner has exercised due diligence to make her in all respects seaworthy. This is not the construction placed upon the act by the Supreme Court. In the Carib Prince, 170 U. S. 655, 18 Sup. Ct. 753,

¶ 1. Statutory exemption of shipowners from liability, see note to Nord-Deutscher Lloyd v. Insurance Co. of North America, 49 C. C. A. 11.

42 L. Ed. 1181, the ship was held to be unseaworthy at the time of the commencement of the voyage by reason of a latent defect in the peak tank caused by a rivet head breaking and leaving a hole through which the water entered which injured the cargo. Mr. Justice White, who delivered the opinion of the court, says:

"The contention is that, as the owner exercised due diligence to make the ship seaworthy, he was consequently not liable, because, under the present state of the law, a ship owner is no longer under the obligation to furnish a seaworthy ship, but only to exercise due diligence to do so."

After quoting and construing sections 2 and 3 of the Harter act, the court concludes:

"The immunity from risks of a described character, when due diligence has been used, cannot be so extended as to cause the statute to say that the owner when he has been duly diligent is not only exempted in accordance with the tenor of the statute from the limited and designated risks which are named therein, but is also relieved, as respects every claim of every other description, from the duty of furnishing a seaworthy ship."

Mr. Justice Brown, who, with Mr. Justice Brewer, dissented from the judgment of the court, was in accord with the majority in its construction of the Harter act. He says:

"I agree with the majority of the court that the Harter act cuts no figure in this case. While it is possible that the framers of this act may have intended to exonerate ships from the consequences of unseaworthiness where due diligence has been used to make them seaworthy, it must be conceded that the language of the third section does not express such intent, since it only exonerates them from faults or errors in navigation or management."

To the same effect is Int. Nav. Co. v. Farr & Bailey Mfg. Co., 181 U. S. 218, 21 Sup. Ct. 591, 45 L. Ed. 830.

We conclude, therefore, that it was the duty of the carrier to provide a seaworthy vessel at Duluth for the reception of the cargo; that is, a vessel reasonably fit to carry the flaxseed, having in view the time of the year and the weather to be fairly expected during the voyage.

It is manifest that a vessel commencing her voyage with hatches so improperly or negligently covered that water in large quantities can find its way through them, is not seaworthy, especially when the voyage is undertaken at a season of the year when it is to be anticipated that the vessel will encounter heavy seas and that her decks will be constantly flooded. Whether or not the Elphicke was seaworthy as to her hatches when she started from Duluth was a question of fact. The testimony was taken before the District Judge who, therefore, had advantages in determining its weight which an appellate court does not possess. He found that the hatch coamings and covers were defective and insufficient to protect the cargo. The proof justified this finding and we are not disposed to disturb it. There was testimony that some of the tarpaulins were torn, worn out and so thin in places that one could almost see through them. The battens were old and split and could not hold the tarpaulins in place. The coamings were defective and the hatch covers were worn, broken and did not fit tightly. The staples were wide apart and some of them were missing. Perhaps the most persuasive proof that the grain was damaged by the

defective hatches and coverings is found in the fact that water in large quantities was found directly beneath the hatches and comparatively little was found elsewhere. One of the witnesses testified:

"There was a scum between the hatches of probably one inch or something like that, where the water had been running over. * * * In the after hatch we found water solid on top that we had to bail out with pails, that water was two feet deep."

It is impossible to account for this condition under the hatches upon the appellant's theory that the water entered through the waterway seams which were opened by the straining and twisting of the vessel in the seaway.

That the Elphicke encountered a serious gale on Lake Erie is most true. It was, however, not an extraordinary gale for November.

The proof as to the velocity of the wind was conflicting, but the preponderance of evidence was to the effect that it did not exceed 40 miles an hour.

We are convinced that the District Court was correct in holding that the proximate cause of the damage was the insufficiency of the hatches and their coverings and not the severity of the gale.

The libel was properly filed by the insurance companies. The Centennial (D. C.) 2 Fed. 409, 412.

The decree is affirmed, with interest and costs.