## THE PRESQUE ISLE.

(District Court, W. D. New York. August 24, 1905.)

1. SHIPPING—INJURY TO CARGO FROM UNSEAWORTHY CONDITION OF VESSEL—ESTOPPEL OF CHARTERER.

The principle that a charterer who accepts a vessel which is in a defective condition cannot complain of injury to the cargo caused by such defects is applicable only where the vessel was examined and accepted with knowledge of her condition; otherwise, he has a right to rely on the implied warranty of seaworthiness.

2. EVIDENCE—PAROL EVIDENCE—CONTRACT OF AFFREIGHTMENT—BILL OF LADING.

A bill of lading, while prima facie evidence of the receipt of the merchandise and of its condition when received, as a contract of affreightment, stands in the same position as other written agreements, and cannot be varied or altered by prior conversations.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 1827.]

3. SHIPPING—INJURY OF CARGO—BURDEN OF PROOF.

A vessel owner who receives goods in good condition, as evidenced by the bill of lading, and delivers them damaged, has the burden of proof to establish that the damage arose from an excepted risk.

[Ed Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 481.]

4. SAME—LIABILITY OF VESSEL.

> Libelant, a lake carrier, which contracted for the carriage of merchandise from New York to Chicago, and afterwards chartered the respondent canal boat to carry the cargo from New York to Buffalo, to be there transshipped, made such contract in the capacity of shipper, and as such may maintain a suit in rem against the canal boat to recover for damage to the cargo during the shipment.

In Admiralty. Suit in rem to recover for damage to cargo.

Brown, Ely & Richards and Harvey L. Brown, for libelant.

Gibbons, Pottle & Talbot and Frank Gibbons, for claimant and respondent.

HAZEL, District Judge. On July 16, 1903, Chase & Sanborn, of Chicago, Ill., consignees of a cargo of coffee which had arrived at the port of Brooklyn, N. Y., on the steamer Syracuse, being desirous of shipping the same via Erie Canal to Chicago, through their forwarding agents engaged the libelant, Western States Line, a corporation, to convey the cargo in question. The libelant, owning no canal boats, thereupon chartered the Presque Isle, owned by the Erie Dock & Transportation Company, to carry the merchandise to Buffalo, where it was to be transhipped to the steamer Wissahickon for the remainder of the voyage. The coffee was loaded into the canal boat on July 16 and 17, 1903, from Bulkhead Piers 5 and 6, Brooklyn. The evidence shows that during the time of loading the weather was threatening and misty, but, as hereinafter stated, rain did not fall. On the removal of the cargo from the canal boat at Buffalo some of the sacks of coffee were found to be stained and moist. An investigation was immediately instituted, which resulted in discovering damage to other sacks in the hold. The damaged sacks were segregated on the wharf from those untouched by water or dampness. Upon reconditioning the cargo it appeared that out of the shipment of 2,507 bags of coffee 218 were injured or waterstained in spots. None were wholly wet or damp. In consequence of such partial moisture or dampness the coffee in some of the sacks became heated or sweated, so called. The Western States Line has filed a libel in rem against the canal boat to recover the damage to said cargo.

The facts relating to the damaged condition of the cargo are not disputed, and the amount involved is not large. Libelant claims that the merchandise, when loaded, was in good condition, and that the moisture or injury complained of was entirely owing to the unseaworthiness of the vessel, in that during the trip water leaked through her deck upon the cargo. The claimant contends, among other things, that such defect or cracks, if any, in the deck of the vessel, were perfectly obvious to the libelant, and could have been observed by the exercise of reasonable diligence, and therefore the charterer cannot now complain. This proposition is maintained by counsel for claimant upon the authority of Waterhouse v. Mining Co., 97 Fed. 466, 38 C. C. A. 281, and Hughes on Admiralty, pp. 160, 161. But these authorities are thought to be inapplicable. The principle upon which this defense may be interposed is where

the charterers examined and accepted the vessel with knowledge of her condition. The elicited facts do not warrant the conclusion that the libelant had knowledge of the leaky condition of the canal boat. The simple fact that the stevedores were employed by libelant to stow the cargo, and probably had some opportunity to observe the condition of the boat, is insufficient to establish such knowledge on the part of the charterer. And in the rare instance only where a vessel is engaged with actual knowledge of her defective condition is she excused from the implied warranty of seaworthiness at the inception of the voyage. To escape liability as a common carrier for damage to her cargo, the transporting vessel must be stanch, strong, and fitted for the service for which she is engaged. Her condition must be such as will enable her to carry the cargo which she undertakes to transport without injury on account of leakage or other defects of construction, which afford insufficient protection to her freight. The Caledonia, 157 U. S. 124, 15 Sup. Ct. 537, 39 L. Ed. 644; The C. W. Elphicke (D. C.) 117 Fed. 279, affirmed 122 Fed. 439, 58. C. C. A. 346.

The Western States Line, by its parol and documentary arrangement with the master of the Presque Isle, did not, as contended by claimant, become her owner pro hac vice. The New York (D. C.) 93 Fed. 495. She was not demised to libelant, nor navigated at its expense, and hence the arrangement must be deemed to have been a mere contract of affreightment. The control and management of the canal boat remained in the claimant, and the amount paid by libelant at the beginning of the voyage was advanced on account of the contract of affreightment, and not otherwise. By the bill of lading or captain's manifest the master agreed to transport the cargo from New York, and deliver the same in "like good order" at Buffalo. The bill of lading, in the ordinary printed form, consisted of a receipt for the merchandise, acknowledging that the goods were received in good condition, and concisely stating the carrying agreement. The suggestion, therefore, that the transporting boat was bailee for hire only, and liable to mere ordinary skill and care, is without force, and the authorities cited upon this point are thought not to apply. It is uniformly held that a bill of lading is prima facie evidence of the receipt of the merchandise and its condition at the time of delivery (4 Amer. & Eng. Ency. of Law, p. 728; Nelson v. Woodruff, 66 U. S. 156, 17 L. Ed. 97; Ellis v. Willard, 9 N. Y. 529; The T. A. Goddard [D. C.] 12 Fed. 174; Lazarus v. Barber [C. C. A.] 136 Fed. 534); but as a contract it stands in the same position as that of all other written agreements, and accordingly cannot be varied or altered by prior conversations. That the damage was caused on account of leakage in the deck of the transporting canal boat, which rendered her unseaworthy for carrying freight of the class mentioned in the bill of lading, is clearly shown by preponderating evidence. That the cargo was exposed to rain at the time of loading is not sustained by the proofs.

Claimant contends that the trip was made during extremely hot weather, and that the heat was apt to crack open the boat's deck; but I incline to the opinion that the deck was defective and un-

sound at the commencement of the voyage. Libelant's witness Sprickman, who made an examination of the hold of the canal boat immediately upon discovering the damaged coffee, testifies that he saw the damp oakum driven through the seams, and drops of water still hanging on the underside of the deck, and, further, that two men were calking on the boat while he was engaged in unloading. Libelant's witness Strasmer, describing the condition of the Presque Isle, states that the deck had been patched extensively, there were canvas patches at the bottom of the hatch coamings, and there were places where it was deteriorated or rotten. He also states that there were pieces of canvas fastened onto the deck, to "cover a seam where the coaming was set onto the deck." The fact that sacks which were not piled or placed directly underneath the openings in the deck were found to have been slightly wet or moist is not surprising, when it is considered that the bags were irregularly stowed in the hold. Witness Donnelly, for libelant, explains that the sacks were—

"Dumped in the hold. They weren't stowed, and in spots where the leak came through, or the wet, the sacks were wet on the ends and in the center and different places, just as it went down through."

The merchandise for transportation having been received in good order, the carrier must be held responsible for its damaged condition, inasmuch as the bags became wet or moist during the voyage from the place of loading to the point of transshipment. The claimant has not satisfactorily explained such damaged condition of the cargo on its arrival at the port of Buffalo. The rule stated by Judge Holt in the case of The Patria (D. C.) 125 Fed. 425, likewise has application here. In that case the court said:

"I think that the rule applies that, when a common carrier receives goods in good condition and delivers them damaged, it has the burden of proof to show that the damage was caused by a risk excepted in the bill of lading, and, in the absence of satisfactory proof that the damage was so caused, the court is justified in finding for the libelant, even if the cause of damage does not plainly appear."

See, also, The Caledonia, supra; Work v. Leathers, 97 U. S. 379, 24 L. Ed. 1012; The Oregon (C. C. A.) 133 Fed. 609; Insurance Co. of North America v. North German Lloyd Co. (D. C.) 106 Fed. 973.

It is further urged on the part of the claimant that the libelant has no lien for any damage to the cargo, and therefore has no cause of action against the boat in question. As between the parties to the contract of affreightment, the libelant was the shipper, and as such, I think, has the right to hold the carrying ship responsible for claims growing out of such contract. Dupont De Nemours & Co. v. Vance et al., 19 How. 162, 15 L. Ed. 584. The rights of the owner of the vessel and the shipper, as stated in the bill of lading, are mutual, and the transporting vessel is liable under the contract for failure to fulfill its obligation. Even though no evidence of subrogation to the right of the cargo owner has been shown, the libelant, in my opinion, may nevertheless enforce the liability arising out of the contract. The final disposition of this point, however, may be reserved to the hearing before the commissioner appointed to

ascertain the amount of damage. It is alleged in the libel that the Western States Line paid to the cargo owners the amount of the injury, and presumably evidence showing such payment and subrogation to the claim of Chase & Sanborn will then be forthcoming.

My conclusion, therefore, is that there should be a decree for the libelant, with the usual reference to the clerk to fix the damages.