---

## THE H. & S. NO. 3.

(District Court, W. D. Washington, N. D.   February 20, 1917.)

No. 3394.

1. MARITIME LIENS ⬅4—LOSS OF CARGO—UNSEAWORTHINESS—EFFECT OF DEMISE.

Claimant demised a scow for 24 months at a monthly rental, the charter party requiring the charterer to protect claimant against any claim arising from maritime accidents, stranding, or collision. Libelant, having contracted to transport a quantity of cement, engaged the charterer to carry a load without knowledge that it was not the owner of the scow. On the way to the port of loading the scow struck an obstruction and was injured, but proceeded and after some repairs loaded and started on its voyage. Owing solely to its unseaworthy condition, caused

by its injury, it stranded and sank, with total loss of its cargo, for which libelant paid the owner. *Held*, that while libelant, as between it and the owner of the cement, was the carrier, as between it and the charterer of the scow it was the shipper, and entitled to a lien on the scow for loss of the cargo through unseaworthiness at the commencement of the voyage, and that such right was not affected by the provisions of the charter party, of which it had no knowledge or notice of facts to put it on inquiry.

2. TOWAGE ☞9—LIEN FOR TOWAGE SERVICE—WASHINGTON STATUTE.

Intervener furnished towage for the scow under contract with the charterer, both before its stranding and on that trip. Rem. & Bal. Code Wash. § 1187, gives a lien for towage on vessel and cargo. *Held* that, under such statute and the general rule in admiralty, intervener was entitled to a lien on the scow, of equal rank with libelants', for the towage on the trip, when she stranded without his fault, and to a decree for the amount previously earned against the charterer.

In Admiralty. Suit by the Chesley Tug & Barge Company and the Corsby Towboat Company against the scow H. & S. No. 3, the Harper Barge & Lighterage Company, claimant, and C. A. Bailey, with N. M. Nelson intervening libelant. Decree for libelants and intervener.

William H. Gorham, of Seattle, Wash, for libelants.
Jones & Riddell, of Seattle, Wash., for intervener.
C. H. Hanford, of Seattle, Wash., for claimant.

NETERER, District Judge. [1] On the 25th day of January, 1916, the claimant, sole owner of scow H. & S. No. 3, for a cash consideration of $2,400, payable monthly at the rate of $100 per month, chartered the scow to the Bailey Transportation Company of Seattle. It was provided in the charter party agreement that certain improvements should be made upon the scow by the lessee at its expense, and it was further provided that the lessee should save the claimant, owner, "harmless from any and all claims resulting from maritime accidents, collisions, stranding, or damage by the scow to other vessels, and in the event of loss of said scow, the party of the second part [lessee] agrees to pay the party of the first part [owner] the sum of $3,000." Pursuant to this agreement the scow was delivered to the Bailey Transportation Company. Thereafter, in May, 1916, Kaiser, intervening libelant, owner of 3,500 tons of cement located at Bellingham, Wash., contracted with libelant to transport by water from Bellingham to Ebbey Slough, Snohomish county, this cement, for which he agreed to pay 65 cents per ton. In June following libelant contracted with Bailey Transportation Company for the transportation of 380 tons of Kaiser's cement. Bailey, for the Bailey Transportation Company, left Seattle with a scow belonging to the claimant, but demised to Bailey, for Bellingham, and while en route, unknown to libelant, the scow struck a pile or stick of timber and was rendered unseaworthy. Upon arriving at Bellingham, Bailey undertook to remedy the damage done to the scow, and made some repairs, and then loaded upon the scow 380 tons of cement and proceeded to Ebbey Slough, and while en route, by reason of the unseaworthy condition of the scow, it filled and stranded, and the cement became a total loss. After the cement was loaded on the scow at Bellingham, there was no stress of weather or peril of

navigation which contributed to the scow's unseaworthiness or to the loss of the cement. Libelant rendered service in salving and towing the scow from the place of stranding to Seattle, of the reasonable value of $700. After the stranding, Kaiser, in his books, charged libelant with the value of the cement lost. Libelant made no corresponding credit on its books. Thereafter libelant advanced to Kaiser the sum of $1,800 on account of the loss, which Kaiser on his books credited to libelant. Libelant transported the remaining portion of the cement pursuant to its contract, and since the loss of the 380 tons of cement has earned $2,473, which amount Kaiser has credited on his books to libelant, and has not paid libelant the same. The scow was damaged by stranding to the extent of $200. Intervening libelant, Nelson, has a claim against the scow for towage rendered prior to stranding, and on voyage when stranded, in a balance of $307.15. The amount due for towage on the particular trip when the scow stranded was $75. The value of the cement lost was $3,960.

Upon the facts thus established libelant contends that it is subrogated to the rights of Kaiser, the owner of the cement, in the sum of $1,800 advanced, and the further sum of $2,160, balance of $3,960, the value of the cargo lost. Nelson, intervening libelant, contends that he is entitled to a lien on the scow for the full amount of the unpaid towage charge for services rendered in towing the damaged scow; this being a lien which is given him under the laws of Washington. Rem. & Bal. Code, § 1187. This contention the libelant refutes, asserting that the statutes of a state cannot override the general maritime law, and that the lien for wages earned prior to collision is inferior to the lien for damages caused by the collision. The Evolution (D. C.) 199 Fed. 514. The claimant contends that, the demise of the vessel being made with the condition that the owner of the scow shall be held harmless from all claims by reason of collisions, etc., any arrangement made by the libelant with the demisee was made subject to this condition, and that the scow could not be held for any damage which might be occasioned to the shipper, and further contends that, the libelant having assumed responsibility for the damage and having settled the same with Kaiser, and having paid $1,800 on account in cash, and the balance being paid by freight earned, it has no standing in court and was not subrogated to any rights which Kaiser might have had, and further that the Bailey Transportation Company was acting merely as agent for the libelant and the libelant itself was the principal, and the scow being seaworthy at the time it was delivered in Seattle, no claim can be asserted in any event.

I think an analysis of the relations of the parties would, without dispute, show that, as between libelant and Kaiser, libelant was the shipper and Bailey the carrier; that Bailey, as the carrier for libelant, and the scow, are charged with all the carrier's liability as completely as libelant is charged as a carrier for Kaiser; that the Bailey Transportation Company was owner pro hac vice, and that the scow would be holden for damage to the cargo; and that, while libelant is liable to Kaiser for the negligence of Bailey and the unseaworthiness of the scow, by the same token Bailey and the scow are liable to libel-

ant for the negligence of Bailey and the unseaworthiness of the scow. There being no stipulation to the contrary, the libelant had a right to rely on the scow being seaworthy. The Carib Prince, 170 U. S. 655, 18 Sup. Ct. 753, 42 L. Ed. 1181. The proof is further beyond dispute that the unseaworthy condition of the scow at Bellingham was at all times unknown to libelant until subsequent to the stranding. It is alleged, and the proofs establish, that the cement was delivered at Bellingham June 26th in good condition on board the scow for transportation; that at the time of the delivery the scow was not seaworthy. The implied warranty as to its seaworthiness as between Bailey and libelant was thus violated, and, while the scow left Seattle to obtain this cargo at Bellingham, it cannot be successfully contended that any relation to the trip could attach to the libelant until the delivery of the cement at Bellingham. While it is true that the libelant agreed to furnish a complete cargo, it was not in any sense a demise of the scow. The relation of the libelant, therefore, was not that of owner pro hac vice, but rather that of a shipper, and was entitled to the guaranties which the law affords in such relations. The Bailey Transportation Company hired the scow, employed all of the help, bore all of the expenses, and became, therefore, the owner pro hac vice. The New York (D. C.) 93 Fed. 495. The libelant, being ignorant of the provisions of the charter party, and no circumstances being presented which would place it upon its inquiry, I think, had a right to rely on the uniform rule that the vessel and the cargo are reciprocally bound to each other. The Maggie Hammond, 9 Wallace, 76 U. S. 435, 19 L. Ed. 772. And, being thus bound, the scow became liable to the cargo for any damage, and the cargo to the scow for any obligations of transportation. Nor does the Harter Act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [Comp. St. 1916, §§ 8029–8035]) afford any relief to the claimant, the scow being bound to the cargo and the casualty being occasioned by unseaworthiness. The Carib Prince, supra; The Sylvia, 171 U. S. 462, 19 Sup. Ct. 7, 43 L. Ed. 241. And this applies, even though the vessel is engaged in domestic trade. Knott v. Botany Worsted Mills, 179 U. S. 69, 21 Sup. Ct. 30, 45 L. Ed. 90.

In the absence of notice or occasion of facts which should put the shipper upon inquiry, the claimant must be held to assume the risks of navigation by holding out his vessel to the world as liable to those with whom she is brought into relations. Hughes, Admiralty, page 342. Claimant, in its brief, states:

"The libelants are principal contractors and directly responsible to the shipper for safe carriage of the cargo; to him they owe a duty to provide a seaworthy vessel; to him they warrant the seaworthiness of the carrying vessel. To the shipper a right of action accrued against the libelants for loss of his cargo. The lien upon the scow was a security for the due performance by the libelants of their contract to carry the cargo safely to its destination or render compensation for its loss in transit. Satisfaction of that obligation by the party obligated exhausted the cause of action necessary to support the lien and exhausted the incidental security; that is to say, the lien."

I think this may be answered by saying that the libelant occupied a dual relation—to the Bailey Transportation Company, as shipper; to Kaiser, as carrier. As between libelant and the Bailey Transportation

Company it had a lien upon the scow for safely carrying the cargo to its destination and to render compensation for its loss in transit. This liability between libelant, as shipper, and the Bailey Transportation Company, as carrier, is not changed by the fact that Kaiser may have sustained the relation of shipper to libelant. This is sustained by sound reason, and I find no authority to the contrary, and I think is fairly sustained by precedent. The New York, supra; The Presque Isle (D. C.) 140 Fed. 202; Benner Line v. Pendleton, 217 Fed. 497, 133 C. C. A. 349. The assumption of liability on the part of libelant to Kaiser did not discharge the liability of the Bailey Transportation Company and the scow to the libelant; nor was it necessary to secure an assignment of the cause of action and right of lien by Kaiser to libelant, conceding for the moment that the right of lien could be assigned, as the relation which the scow and the Bailey Transportation Company, carriers bear to the libelant, obviates such necessity; the liability and right of lien being inherent and vesting in libelant, as shipper, under the general rules of admiralty. The suggestion of the relation of principal and surety, as between the scow and libelant, to Kaiser, is not apparent. The doctrine of subrogation, therefore, as contended for by claimant, has no application. No fault can be found with German Bank v. United States, 148 U. S. 573, 13 Sup. Ct. 702, 37 L. Ed. 564; but the principle therein enunciated is not applicable to the facts in this case. Nor do I think the disclosed facts show that the holding of The Frances J. O'Hara (D. C.) 229 Fed. 312, The Kate, 164 U. S. 459, 17 Sup. Ct. 135, 41 L. Ed. 512, and The Valencia, 165 U. S. 264, 17 Sup. Ct. 323, 41 L. Ed. 710, aids claimant.

[2] The cargo being lost without any fault on the part of the intervener, Nelson, and his charge for towing being made a lien by the Washington statute and under the general rule in admiralty, he should not be deprived of the rights thus given without any fault upon his part. The cargo and the vessel were both liable to the services which he performed on the trip, and the casualty being occasioned without any fault on his part should not relegate him to an inferior right. The John G. Stevens, 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969, while not supporting this contention, made the towage claim inferior solely on the ground that the damage was occasioned by reason of negligent towage.

I think a decree should be entered in favor of Nelson, intervener, for $75 and costs, and the sum established as a lien against the scow, the amount being for towing on the particular trip in issue, and for $232.-15 against the respondent Bailey, as the Bailey Transportation Company, and in favor of the libelant for $3,960, the value of the cargo, and $500 salvage charge, the salvage charge above this amount being waived, and these sums established as a lien against the scow, and that the libelant should have a judgment in personam against Bailey, as the Bailey Transportation Company, for any difference remaining after applying the proceeds of the sale of the scow to the satisfaction of the amount due, and that libelant is also entitled to receive from Kaiser $410, the difference between $4,370, the amount of transportation charges earned, and $3,960, the value of the cargo.